STATE *ex rel.* RANDY LEE BOSO

*v.*

HONORABLE RICHARD A. WARMUTH,

*One of the Judges, etc., et al.*

(No. 14807)

Decided July 8, 1980.

Rehearing Denied October 7, 1980.

*O'Brien, Cassidy & Gallagher and Patrick S. Cassidy, Fitzsimmons & Parsons and William E. Parsons II*, for relator.

*Chauncey H. Browning*, Attorney General, *Frances W. McCoy*, Assistant Attorney General, for respondents.

NEELY, CHIEF JUSTICE:

In this prohibition proceeding we are asked to determine whether the respondents are barred from prosecuting the relator on felony indictments returned by grand juries in Marshall County under the "Three Term Rule," *W.Va. Code*, 62-3-21 [1959]. Since the relator fled the State to avoid prosecution, the real question is not whether three terms have passed since the relator was indicted, but whether the State acted with reasonable diligence under the "Three Term Rule" to procure his return and trial after he was located in a foreign jurisdiction. We conclude that, under the facts presented, the State acted with reasonable diligence, that three terms, as envisaged by the "Three Term Rule," have not passed, and that the State is not barred from prosecuting the relator.

The relator was indicted for breaking and entering during the November 1977 Term in the Circuit Court of Marshall County. At the March 1978 Term he was indicted for felonious assault. During the March 1978 Term the relator fled to Florida; however, he was promptly arrested and jailed for crimes which he had

allegedly committed in Florida. Immediately after learning of his apprehension, West Virginia authorities filed detainers against him pursuant to the Interstate Compact on Detainers, *W.Va. Code*, 62-14-1 [1971], *et seq.*

Before the end of the March 1978 Term, counsel for the relator indicated in a letter to the prosecutor of Marshall County that if the State of West Virginia would lift the detainers, the relator would voluntarily waive extradition. What the prosecutor did after receiving the letter is unclear from the record; however, it does appear that the State was lulled into the mistaken belief that the relator's voluntary return to West Virginia was imminent, for during the July 1978 and November 1978 Terms of the circuit court the State took no action to secure the relator's return. When it became apparent that relator would not voluntarily return, the State, during the March 1979 Term instituted extradition proceedings. Immediate extradition was frustrated by the issuance of a defective extradition warrant by the Governor of Florida and by the relator's challenge of that warrant. After the issuance of a new warrant, the relator, on September 20, 1979, was transported to West Virginia. Then, upon relator's return to this jurisdiction, relator made several pretrial motions including one for an examination to determine competency to stand trial.[1]

---

[1] The actual chronology of what occurred is as follows:

a. During the November 1977 Term of the Circuit Court of Marshall County, Indictments Nos. 77-F-82 and 77-F-83 were returned against the appellant. Even apart from our holding in the present case, this term would not be chargeable against the State because the term at which the indictment is returned is not to be counted in favor of discharge. *State ex rel. Whytsell v. Boles*, 149 W.Va. 324, 141 S.E.2d 70 (1965); *State ex rel. Smith v. DeBerry*, 146 W.Va. 534, 120 S.E.2d 504 (1961).

b. During the March 1978 Term Indictment No. 78-F-21 was returned; the appellant fled the State to avoid prosecution; and, he failed to appear in court according to the requirement of his recognizance. Because of his failure to appear this term is not chargeable against the State. *Farley v. Kramer*, 153 W. Va. 159, 169 S.E.2d 106, cert. denied 396 U.S. 386, 90 S.Ct. 482, 24 L.Ed.2d 451 (1969). During this term the State filed a detain-

*W.Va. Code*, 62-3-21 [1959] sets forth the "Three Term Rule." It provides, in part:

> "Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused ... by reason of his escaping from jail, or failing to appear according to his recognizance, ...."

---

er against the appellant, and the appellant attempted to persuade the State to lift that detainer.

c. During the July 1978 Term the appellant plead guilty to the Florida charge and was sentenced to a Florida correctional center.

d. During the November 1978 Term, the State of West Virginia did nothing.

e. During the March 1979 Term the Governor of West Virginia instituted extradition proceedings against the appellant. Under our holding in *State ex rel. Stines v. Locke*, 159 W. Va. 292, 220 S.E.2d 443 (1975), this would be an exercise of reasonable diligence on the part of the State, and the term could not thus be counted in favor of discharge.

f. During the July 1979 Term the appellant challenged the extradition proceeding, and on September 20, 1979, he was returned to West Virginia. Under *State v. Locke, supra*, the return shows a clear exercise of reasonable diligence on the part of the State.

g. During the November 1979 Term the appellant moved that his mental competency to stand trial be tested. *W.Va. Code*, 62-3-21 [1959] specifically provides that a term during which an accused is insane shall not be counted for the purpose of the "Three Term Rule." This provision is sufficiently broad to include any term during which a defendant's mental competency is being tested.

h. During the March 1980 Term the appellant prosecuted his present appeal in our Court. In *State v. Loveless*, 142 W.Va. 809, 98 S.E.2d 773 (1957), we said that a regular term of court occurring during the pendency of a writ of error granted defendant should not be counted. Likewise, a term occurring during the pendency of a writ of prohibition should not be counted.

This statute places the defendant who avoids prosecution by fleeing the State in a category apart from the defendant who remains available for trial. It is obvious that the Legislature did not intend to charge the State with a three-term delay where the defendant's whereabouts were unknown or where he, through no fault of the State, was unavailable for trial.

However, in interpreting *W.Va. Code,* 62-3-21 [1959], we have recognized that once a defendant's out-of-state whereabouts become known, the statute imposes a duty on the State to exercise reasonable diligence to procure temporary custody of the defendant for the purpose of offering him a speedy trial. Failure of the State to exercise such reasonable diligence entitles the defendant to count the terms during which the State took no action against the relator under the "Three Term Rule," *W.Va. Code* 62-3-21 [1959]. *See State ex rel. Stines v. Locke,* 159 W. Va. 292, 220 S.E.2d 443 (1975).

The requirement that the State use reasonable diligence to procure a defendant for trial when he is absent from the State but his whereabouts are known, is a gloss which this Court has imposed upon the bare language of the three term statute, *W.Va. Code,* 62-3-21 [1959]. However, the policy underlying this gloss is consistent with the overall purpose of criminal law, namely, the rehabilitation of the felon. In this regard we recognize that rehabilitation can be accomplished only if the felon knows that after a reasonable and certain time he will be free to begin a new life. It was this very policy which underlay our holding in *State v. McMannis,* 161 W.Va. 437, 242 S.E.2d 571 (1978), where we determined that the recidivist statute is applicable only if a person has been previously convicted and served a term of imprisonment or probation, and that recidivist penalties cannot be imposed for crimes committed seriatum and prosecuted separately after apprehension, if the defendant had no previous opportunity to reflect upon his antisocial conduct and be rehabilitated.

Furthermore, this rehabilitation policy has militated in favor of trial courts' giving concurrent sentences to

all but the most heinous offenders. While rehabilitative value of imprisonment may be speculative, the therapeutic value of the aging process has never been questioned; consequently, it is reasonable to infer that getting older will make transgressors less anti-social. In order for rehabilitation or some combination of rehabilitation and getting older to make sense, it is only logical that transgressors should be shown the consideration of disposing of all of their transgressions simultaneously so that they shall not be compelled to endure their confinement with the constant specter of old cases destroying new lives.

Although we have held that the State has an obligation to procure an accused expeditiously for trial once the State knows that the accused is incarcerated elsewhere, under appropriate circumstances where an accused has already been indicted in West Virginia and fled elsewhere, there is a corresponding obligation imposed upon the accused not to resist the State's efforts to return him for trial. Furthermore, the administrative burdens of securing a defendant for trial are substantial, and a defendant cannot take advantge of the "Three Term Rule" where he has resisted the West Virginia authorities after they have taken the initial steps to secure his return. If a defendant refuses to waive extradition, then he cannot rely upon lack of reasonable diligence on the part of the West Virginia authorities since it is impossible, given the layers of bureaucracy in the several states, for a court to assess relative degrees of fault on the part of the defendant, the other state or states involved, and the West Virginia authorities. A defendant who wishes to secure fair treatment must be willing to treat the State fairly and a *quid pro quo* of asserting dilatory proceedings under the "Three Term Rule" is the defendant's own willingness to cooperate to get all past transgressions accounted for and the new life begun.

It does not appear that the relator in the case before us cooperated with the State in securing his return to West Virginia. He initially prevented a speedy trial by

fleeing the State. After his incarceration in Florida, he lulled the authorities into believing that he would waive extradition. He then refused to waive extradition. We conclude that under the facts presented, the State acted with reasonable diligence in procuring the relator's return, and the State is not barred by the "Three Term Rule" from prosecuting him on the indictments returned in Marshall County.

The writ of prohibition is therefore denied.

*Writ denied.*