STATE OF WEST VIRGINIA,

EX REL. ELLIOTT E. MAYNARD,

PROSECUTING ATTORNEY

*v.*

JOHN F. BRONSON, *Judge*

*of the Circuit Court of Mingo County,*

*West Virginia* AND

MILLARD THORNHILL

(No. 15152)

Decided May 12, 1981.

*Elliott E. Maynard,* Prosecuting Attorney, for relator.

*Cecil C. Varney* for respondent.

MCHUGH, JUSTICE:

This action is before this Court upon the petition of the relator, Elliott E. Maynard, Prosecuting Attorney of Mingo County, West Virginia, filed herein on February 24, 1981, for a writ of prohibition, upon the February 24, 1981, order of this Court commanding and directing the respondent, Judge John F. Bronson of the Circuit Court of Mingo County, West Virginia, to show cause why a writ of prohibition should not be awarded against him, the response to the petition, the stipulations of counsel, all

other matters of record and upon the memoranda of law and argument before this Court.

In this action, the relator seeks to prohibit the respondent from granting relief under the Agreement on Detainers, *W.Va. Code*, 62-14-1, *et seq.*, to the accused, Millard Thornhill.

Millard Thornhill, in April 1979, was indicted for various felonies by the Grand Jury of the Circuit Court of Mingo County, West Virginia.[1] Subsequently, Thornhill was incarcerated in the Franklin County Jail in Columbus, Ohio.

On or about February 27, 1980, the relator through the West Virginia Department of Corrections filed a detainer with the Ohio authorities to secure the presence of Thornhill for trial in Mingo County. This trial was to be held on March 20, 1980. Thornhill, however, was not returned to West Virginia.

By letter dated March 28, 1980, the Sheriff of Mingo County was informed by United States Penitentiary authorities in Terre Haute, Indiana, that Thornhill was incarcerated in Indiana and that a detainer from West Virginia could be filed. Accordingly, by letter dated April 11, 1980, an assistant prosecuting attorney of Mingo County sought to secure the presence of Thornhill for trial in Mingo County. Trial was to be held on June 10, 1980.

By letter dated June 2, 1980, the United States Penitentiary authorities in Terre Haute, Indiana, informed the relator's office that pursuant to Article III of the Agreement on Detainers, Thornhill had requested disposition of the Mingo County charges and, further, had requested counsel with respect to those charges.[2] The

---

[1] The Mingo County indictments pending against Thornhill are numbered as follows: A79-F-38, A79-F-39 and A79-F-55. These indictments include charges for grand larceny and accessory to armed robbery.

[2] The June 2, 1980, letter from the United States Penitentiary authorities in Terre Haute states, in part, as follows: "It is requested that your office take the necessary steps under Article III of the Agreement and advise of your intentions regarding the pending case."

record also contains the following documents dated June 2, 1980: (1) Thornhill's notice of incarceration in Indiana and request for disposition of the Mingo County indictments; (2) a certificate of inmate status relating to Thornhill's incarceration in Indiana; and (3) an offer by the United States Penitentiary authorities in Indiana to deliver temporary custody of Thornhill to West Virginia. Thornhill, however, was not returned to West Virginia.

By letter dated July 17, 1980, the United States Penitentiary authorities in Terre Haute, Indiana, informed the relator's office that on July 3, 1980, Thornhill had been transferred to the United States Penitentiary at Leavenworth, Kansas. The record indicates that the relator received this letter in late July at a time between the April and September, 1980, terms of the Circuit Court of Mingo County when an immediate trial of Thornhill could not be scheduled.[3]

On or about October 8, 1980, the relator through the West Virginia Department of Corrections filed a detainer with the United States authorities in Kansas to secure the presence of Thornhill for trial in Mingo County. Trial was to be held on December 22, 1980. Thornhill was returned to custody in Mingo County on or about November 25, 1980.

Pursuant to the Agreement on Detainers, *W.Va. Code*, 62-14-1, *et seq.*, and subsequent to the time Thornhill was returned to West Virginia, counsel for Thornhill moved to dismiss the Mingo County indictments. This motion was granted by the respondent Judge of the Circuit Court of Mingo County, resulting in this prohibition proceeding.

The relator contends that he did everything in his power to return the accused to Mingo County but was prevented from so doing by changes in the accused's place of incarceration in other jurisdictions. Therefore, the relator seeks to prohibit the respondent from dismissing the

---

[3] The terms of court for the Circuit Court of Mingo County, West Virginia, are established by *W.Va. Code*, 51-2-1dd. As this statute provides, such terms shall begin "[f]or the county of Mingo, on the third Monday in January, April, and September: Provided, that in the year one thousand nine hundred seventy-six, for the county of Mingo, · on the third Monday in February, April and September."

38

charges against the accused. The relator further contends that the accused failed to object to the December 22, 1980, trial date and failed to demand a speedy trial. Therefore, because the accused did not challenge the delay of trial relating to the Mingo County indictments, those indictments should not be dismissed.

The respondent Judge of the Circuit Court of Mingo County contends that, acting pursuant to the West Virginia Agreement on Detainers, he did not exceed his authority, and therefore, prohibition is not available to the relator to challenge the dismissal of the indictments against the accused. The respondent further contends that the relator had 180 days to bring the accused to trial pursuant to the West Virginia Agreement on Detainers, and that inasmuch as this time period began to run on June 2, 1980, the date of the request by the accused for final disposition of the Mingo County charges, the 180 day period expired on or about December 2, 1980, at which time the accused had not been brought to trial. Furthermore, the respondent contends that although the relator was informed in July 1980 that the accused had been transferred from Indiana to Kansas, the delay caused by this transfer should not be charged against the accused. Accordingly, the respondent contends he had no choice but to dismiss the indictments.

The Agreement on Detainers, *W.Va. Code*, 62-14-1, *et seq.*, is an interstate compact to which the State of West Virginia by statutory enactment is a party. The purpose of the Agreement, as provided in Article I thereof, is to encourage through cooperation among the party states the expeditious and orderly disposition of outstanding criminal charges and the determination of the status of detainers based upon untried indictments, informations or complaints. This Agreement was enacted into West Virginia law in 1971.

Upon the filing of a detainer by a receiving state for a prisoner incarcerated in a sending state,[4] the prisoner may,

_____
[4] "Sending state" and "receiving state" are defined in subsections (b) and (c) of Article II, of the Agreement on Detainers, *W.Va. Code*, 62-14-1, as follows:

under Article III of the Agreement on Detainers, request final disposition of the untried charge relating to the detainer and be transferred to the receiving state for trial. Pursuant to Article III, the prisoner shall be brought to trial within 180 days after he shall have ". . . caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition . . . " The court in the receiving state, however, may continue the prisoner's trial for good cause.[5]

Pursuant to Article V of the Agreement on Detainers, the sending state, responding to a prisoner's Article III request for final disposition, shall offer to deliver temporary custody of the prisoner to the receiving state for

---

(b) "Sending state" shall mean a state in which a prisoner is incarcerated at the time that he initiates a request for final disposition pursuant to Article III hereof or at the time that a request for custody or availability is initiated pursuant to Article IV hereof.

(c) "Receiving state" shall mean the state in which trial is to be had on an indictment, information or complaint pursuant to Article III or Article IV hereof.

[5] Article III of the Agreement on Detainers, *W.Va. Code*, 62-14-1, provides in part as follows:

(a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint: Provided, that for good cause shown in the open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

prosecution. If the appropriate authority in the receiving state shall fail or refuse to accept temporary custody of the prisoner or if the prisoner is not brought to trial within the period of time provided in Article III of the Agreement "... the appropriate court of jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."[6]

The initial question to be developed by this Court is whether prohibition is available to the relator to challenge the dismissal by the Judge of the Circuit Court of Mingo County of the indictments against the accused.

*W.Va. Const.*, art. VIII, § 3, provides that this Court shall have original jurisdiction of proceedings in prohibition.[7] Furthermore, *W.Va. Code*, 53-1-1, provides that "... prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers."

In conjunction with the above constitutional and statutory provisions, the remedy of prohibition has been extensively litigated in this State. Consequently, several principles concerning prohibition have evolved, certain of

---

[6] Article V of the Agreement on Detainers, *W.Va. Code*, 62-14-1, provides in part as follows:

(a) In response to a request made under Article III or Article IV hereof, the appropriate authority in a sending state shall offer to deliver temporary custody of such prisoner to the appropriate authority in the state where such indictment, information or complaint is pending against such person in order that speedy and efficient prosecution may be had. If the request for final disposition is made by the prisoner, the offer of temporary custody shall accompany the written notice provided for in Article III of this agreement. In the case of a federal prisoner, the appropriate authority in the receiving state shall be entitled to temporary custody as provided by this agreement or to the prisoner's presence in federal custody at the place for trial, whichever custodial arrangement may be approved by the custodian.

[7] *W.Va. Const.*, art. VIII, § 3, provides, in part, that "[t]he supreme court of appeals shall have original jurisdiction of proceedings in habeas corpus, mandamus, prohibition and certiorari."

which reinforce the designation of prohibition as an extraordinary remedy thereby limiting its availability.

The right to prohibition must clearly appear, for example', before the petitioner is entitled to such remedy. *Sidney C. Smith Corp. v. Dailey*, 136 W.Va. 380, 390, 67 S.E.2d 523, 528 (1951); *Fisher v. Bouchelle*, 134 W.Va. 333, 335, 61 S.E.2d 305, 306 (1950); Syllabus, *State ex rel. Vineyard v. O'Brien*, 100 W.Va. 163, 130 S.E. 111 (1925).

Moreover, consistent with the language of *W.Va. Code*, 53-1-1, this Court has held that prohibition lies as a matter of right in cases of usurpation and abuse of power, when the inferior court has no jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers. Syl. pt. 2, *State ex rel. Peacher v. Sencindiver*, 233 S.E.2d 425 (W.Va. 1977); *State ex rel. Lynn v. Eddy*, 152 W.Va. 345, 356, 163 S.E.2d 472, 479 (1968); *State ex rel. Heck's v. Gates*, 149 W.Va. 421, 425, 141 S.E.2d 369, 374 (1965). Consequently, it should be noted that in determining in this case whether prohibition is an appropriate remedy, the correctness of the judge's interpretation of the Agreement on Detainers is not before this Court as long as such interpretation does not involve usurpation and abuse of power.

Furthermore, prohibition cannot be substituted for a writ of error or appeal unless a writ of error or appeal would be an inadequate remedy. *Handley v. Cook*, 252 S.E.2d 147, 148 (W.Va. 1979); *Woodall v. Laurita*, 156 W.Va. 707, 712, 195 S.E.2d 717, 720 (1973); *State ex rel. Huntington v. Lombardo*, 149 W.Va. 671, 679, 143 S.E.2d 535, 541 (1965); *State ex rel. Gordon Memorial Hospital v. West Virginia State Board of Examiners for Registered Nurses*, 136 W.Va. 88, 103, 66 S.E.2d 1, 9 (1951). However, the right of the State to direct review or appeal in criminal cases is limited, as indicated below. Consequently, where the State is the petitioner in a criminal matter, the comparison of prohibition versus appeal is not always appropriate.

In *State v. Bailey*, 154 W.Va. 25, 173 S.E.2d 173 (1970), the Circuit Court of Wood County, by order entered October 15, 1969, sustained the defendant's motion to

suppress certain statements made by the defendant to investigating officers and evidence of certain incriminating acts by the defendant made during the investigation at the scene of the crime. The State, by writ of error, sought review in this Court of the circuit court order.

This Court in *Bailey* dismissed the State's writ of error as improvidently awarded. Specifically, this Court held that the jurisdiction of the Supreme Court of Appeals of West Virginia, original as well as appellate, is conferred by and is derived wholly from constitutional or statutory provisions and that nothing could be found to authorize a writ of error by the State to review an order of a circuit court suppressing evidence and ruling it to be inadmissible at trial.

In *Bailey* this Court recognized the right of the State to seek review in this Court (1) in public revenue cases,[8] and (2) in cases involving the "validity" of an indictment.[9]

---

[8] The State of West Virginia has a right of appeal in criminal proceedings relating to the public revenue. As *W.Va. Const.*, art. VIII, § 3 provides, in part:

The court shall have appellate jurisdiction in civil cases at law where the matter in controversy, exclusive of interest and costs, is of greater value or amount than three hundred dollars unless such value or amount is increased by the legislature; in civil cases in equity; in controversies concerning the title or boundaries of land; in proceedings in quo warranto, habeas corpus, mandamus, prohibition and certiorari; and in cases involving personal freedom or the constitutionality of a law. It shall have appellate jurisdiction in criminal cases, where there has been a conviction for a felony or misdemeanor in a circuit court, and such appellate jurisdiction as may be conferred upon it by law where there has been such a conviction in any other court. In criminal proceedings relating to the public revenue, the right of appeal shall belong to the State as well as to the defendant. It shall have such other appellate jurisdiction, in both civil and criminal cases, as may be prescribed by law.

[9] *W.Va. Code*, 58-5-30, provides as follows:

Notwithstanding anything hereinbefore contained in this article, whenever in any criminal case an indictment is held bad or insufficient by the judgment or order of a circuit court, the State, on the application of the attorney general or the prosecuting attorney, may obtain a writ of error to secure a review

As in *Bailey*, nothing in the case before this Court involves the public revenue or whether, under *W.Va. Code*, 58-5-30, the indictments of the accused were "bad or insufficient." Nor does this case involve the West Virginia Post-Conviction Habeas Corpus Act, *W.Va. Code*, 53-4A-1, *et seq.*, pursuant to which the State has a right to appeal. *W.Va. Code*, 53-4A-9. This Court can find no authority which would allow the State to appeal the dismissal by the Judge of the Circuit Court of Mingo County of the indictments against the accused.

Moreover, this Court is of the opinion that prohibition is not a proper remedy to challenge the dismissal of indictments by a judge of a circuit court acting pursuant to the West Virginia Agreement on Detainers, *W.Va. Code*, 62-14-1, *et seq.*, where the judge of the circuit court had jurisdiction of the subject matter in controversy, and

---

of such judgment or order by the supreme court of appeals. No such writ or error shall be allowed unless the State presents its petition therefor to the supreme court of appeals, or one of the judges thereof, within thirty days after the entry of such judgment or order. No such judgment or order shall finally discharge, or have the effect of finally discharging, the accused from further proceedings on the indictment unless the State fails, within such period of thirty days, to apply for such writ of error, or fails to obtain such writ of error upon an application made within such period; but after the entry of such judgment or order the accused shall not be kept in custody or required to give bail pending the hearing and determination of the case by the supreme court of appeals. If, upon the allowance of any such writ of error, process from the supreme court of appeals cannot for any reason be served personally upon the accused, service may be made by filing a copy thereof in the clerk's office of the court which entered such judgment or order. Every such writ of error shall be heard and determined as speedily as possible. If said court reverses the lower court, and holds the indictment good and sufficient for a trial of the accused thereon, the case shall be remanded to the court in which the indictment was found, in order that such trial may be had.

Except as herein otherwise provided, all the provisions of the other sections of this article shall, so far as appropriate, be applicable to a petition for a writ of error under this section, and to all subsequent proceedings thereon in the supreme court of appeals in case such writ of error is allowed or granted.

*See also W.Va. Code*, 58-4-18a.

nothing in the record indicates that the judge exceeded his legitimate powers. *W.Va. Code,* 53-1-1.

In *State ex rel. Winter v. MacQueen,* 239 S.E.2d 660 (W.Va. 1977), the Prosecuting Attorney of Kanawha County, West Virginia, sought a writ of prohibition in this Court to prohibit a judge of the Circuit Court of Kanawha County from placing a defendant on probation.

In that case, the circuit judge on September 1, 1977, placed the defendant on probation upon the defendant's plea of guilty to a felony offense, even though the defendant had been previously convicted of a felony within five years of the date of the felony to which she was pleading guilty. Pursuant to *W.Va. Code,* 62-12-2, the defendant was not entitled to probation.[10]

This Court held, in *Winter,* that, pursuant to *W.Va. Code,* 62-12-2, the circuit judge exceeded his legitimate powers by placing the defendant on probation. Specifically, this Court noted in its opinion the statement of the circuit judge that he had gone "against the statutory law of this State." 239 S.E.2d at 660. Consequently, the writ of prohibition was awarded.

Furthermore, prohibition was held to be a proper remedy in *Hinkle v. Black,* 262 S.E.2d 744 (W.Va. 1979), where the petitioners asked this Court to prohibit a judge of the Circuit Court of Wood County, West Virginia, from transferring certain personal injury actions to Pleasants County, West Virginia.

This Court noted in *Hinkle* that although the transfer of the actions was proper and the petitioners entitled to no relief, prohibition was a proper method of challenging the

---

[10] *W.Va. Code,* 62-12-2, provides, in part, as follows:

(a) All persons who have not been previously convicted of a felony within five years from the date of the felony for which they are charged, and who are found guilty of or plead guilty to any felony, the maximum penalty for which is less than life imprisonment, and all persons whether previously convicted or not, who are found guilty of or plead guilty to any misdemeanor, shall be eligible for probation, notwithstanding the provisions of sections eighteen and nineteen [§§ 61-11-18 and 61-11-19], article eleven, chapter sixty-one of this Code.

action of the circuit court in that, had that court acted improperly in making the transfer to Pleasants County, an appeal of such issue by the petitioners would have been an ineffective remedy. Specifically, this Court stated that opportunities through prohibition are invited "... to correct substantial, clear-cut legal errors where there is the high probability that the trial will be completely reversed if the error is not corrected in advance." 262 S.E.2d at 749.

Moreover, this Court in *Hinkle*, stated that (1) the adequacy of another remedy such as appeal, and (2) economy of effort are factors to be considered in determining the propriety of prohibition. 262 S.E.2d at 748. In *Hinkle*, the remedy of appeal was said to be theoretical, not practical.

In the case before this Court, the jurisdiction of the Circuit Court of Mingo County over the subject matter in controversy has not been brought into question. The accused was indicted in Mingo County and was present in Mingo County upon his return from the United States Penitentiary at Leavenworth, Kansas. No allegation has been made that the trial judge lacked the jurisdictional authority to either dismiss the indictments or conduct a trial of the accused.

Furthermore, upon an examination of the record it cannot be stated that the Judge of the Circuit Court of Mingo County committed a "substantial, clear-cut legal error" within the meaning of *Hinkle v. Black* in dismissing the indictments pursuant to the West Virginia Agreement on Detainers. No showing of usurpation and abuse of power by the judge has been made by the relator. Accordingly, no clear showing for prohibition has been made.

There is no indication in the record that the judge exceeded his legitimate powers. The judge dismissed the indictments against the accused pursuant to specific provisions of the West Virginia Agreement on Detainers. Such provisions were directly applicable to the question of whether the accused could be tried upon the Mingo County indictments. Therefore, unlike the facts in *Winter*, there

was no clear departure by the judge from express statutory provisions. Moreover, as stated above, in the absence of the issue of usurpation and abuse of power, the correctness of the judge's dismissal of the indictments in this case cannot be brought before this Court by prohibition. Prohibition as an extraordinary remedy should not be invoked in the absence of proper grounds. Absent such grounds, prohibition should not be utilized to control the judgment of the circuit judge. We find no exceptional circumstances in this record to warrant the award of prohibition.[11]

For these reasons, and pursuant to the order of this Court filed April 3, 1981, the rule issued by this Court against the respondent Judge of the Circuit Court of Mingo County, West Virginia, directing him to show cause why a writ of prohibition should not be awarded against him, is discharged and the writ denied.

*Writ denied.*

---

[11] It should be noted that the petition does not allege that the Judge of the Circuit Court of Mingo County either lacked jurisdiction to dismiss the indictments or exceeded his legitimate powers in dismissing the same.