443 S.E.2d 257

**STATE of West Virginia ex rel. John R. MODIE, Petitioner,**

**v.**

**Honorable George W. HILL, Jr., Judge of the Circuit Court of Wood County, Respondent.**

**No. 22126.**

Supreme Court of Appeals of West Virginia.

Submitted March 1, 1994.

Decided March 28, 1994.

Patrick E. McFarland, Hague & McFarland, Parkersburg, for petitioner.

Darrell V. McGraw, Jr., Atty. Gen., Stephen R. Van Camp, Asst. Atty. Gen., Charleston, for respondent.

McHUGH, Justice:

In the case before this Court, the petitioner, John R. Modie, seeks a writ of prohibition from this Court to prohibit the respondent, the Honorable George W. Hill, from conducting any further proceedings in the respective criminal cases of *State of West Virginia v. John R. Modie*, No. 93–F–49, and *State of West Virginia v. John R. Modie*, No. 93–F–50, because more than 180 days have passed between the time the petitioner requested disposition of these two cases and the date set for trial.

I

The chronology of events that gives rise to this dispute is as follows:

**November 18, 1992:** The petitioner was convicted of aggravated burglary, an aggravated felony in the first degree, in the Common Pleas Court of Washington County, Ohio.

The petitioner was sentenced to be imprisoned in the Correctional Reception Center at Orient, Ohio for a period of not less than eight nor more than twenty-five years.

**November 27, 1992:** The petitioner was received at the Orient Correctional Center.

Thereafter, the petitioner was indicted in two cases by the Wood County grand jury.

The first indictment charged the petitioner with three counts of obtaining goods or property by false or fraudulent use of a credit card. The second indictment charged the petitioner with three counts of burglary.

**June 4, 1993:** The prosecuting attorney for Wood County requested that the authorities at the Correctional Reception Center at Orient place a detainer on the petitioner.

**June 15, 1993:** The petitioner was advised of his rights under the Agreement on Detainers by the authorities at the Orient facility. The petitioner also signed a notice verifying that he was incarcerated at the Orient facility. On this same day, the petitioner requested a final disposition of all charges which served as the subject of the detainer. Furthermore, the warden of the Orient facility signed a certificate of inmate status and an offer to deliver temporary custody.

**June 18, 1993:** The county circuit clerk and the prosecuting attorney of Wood County received, by certified mail, the documents designating the petitioner's request for disposition, his verification of his place of incarceration, the certificate of inmate status and the offer to deliver temporary custody.

**June 25, 1993:** The petitioner was moved by the Ohio Department of Rehabilitation and Correction to the Chillicothe Correctional Institution.

**July 21, 1993:** The prosecuting attorney's office mailed a request for temporary custody of the petitioner to the Orient facility. The request was made part of the petitioner's file at Orient.

**July 27, 1993:** The request was returned to the prosecuting attorney's office because the petitioner was no longer detained at the Orient facility.

Following the return of this letter, the prosecuting attorney's office sought the assistance of police officer Larry Lee, who was able to locate the petitioner.

**September 28, 1993:** The prosecuting attorney's office mailed a second request for temporary custody to the authorities at the Chillicothe facility.

**October 4, 1993:** The prosecuting attorney's office was notified by the Chillicothe

facility that the petitioner could not be released to the authorities of Wood County because certain paper work had failed to be completed.

**December 15, 1993:** The petitioner was returned to Wood County to face the charges which had been filed against him in West Virginia.

**January 11, 1994:** The petitioner filed a motion to dismiss both of the charges pending against him on the basis that 180 days had passed between his request for a final disposition and the date set for his trial.

**January 13, 1994:** A hearing was held and the respondent denied the petitioner's motion.

Specifically, the circuit court found that the petitioner's request for final disposition was vitiated by the transfer of the petitioner by the Ohio Department of Rehabilitation and Correction from the Correctional Reception Center at Orient to the Chillicothe Correctional Institution and by the petitioner's failure to submit an amended notice of his transfer. Therefore, the circuit court concluded that the petitioner did not give proper notice of his place of incarceration so as to activate the protection afforded by the Agreement on Detainers.

## II

The Agreement on Detainers, as mandated by *W.Va.Code*, 62–14–1, article III(a) [1971] provides, in pertinent part:

> Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, *he shall be brought to trial within one hundred and eighty days after he shall have caused to be delivered to the prosecuting officer and the appropriate court* of the prosecuting officer's jurisdiction *written notice of the place of his imprisonment and his request for a final disposition* to be made of the indictment, information or complaint: Provided,

That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance.

(emphasis added). Article V(c) further provides:

> If the appropriate authority shall refuse or fail to accept temporary custody of said person, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged *is not brought to trial within the period provided in Article III* or Article IV hereof, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order *dismissing the same with prejudice,* and any detainer based thereon shall cease to be of any force or effect.

(emphasis added).

■ We have defined the Agreement on Detainers, *W.Va.Code,* 62–14–1, *et seq.,* as an interstate compact to which the State is a party by statutory enactment. *State ex rel. Maynard v. Bronson,* 167 W.Va. 35, 277 S.E.2d 718 (1981). The purpose of the Agreement on Detainers, as set forth in article I of the agreement, is to encourage the expeditious and orderly disposition of outstanding criminal charges and the determination of the status of detainers based upon untried indictments, informations or complaints. *Id. See also People v. Garner,* 224 Cal.App.3d 1363, 274 Cal.Rptr. 298 (Ct.1990).

The petitioner's primary argument is that more than 180 days have passed since the petitioner gave the Wood County authorities notice of his place of imprisonment and a request for final disposition of the impending charges against him; therefore, the circuit court should have granted the petitioner's motion to dismiss.

■ The United States Supreme Court recently addressed the issue as to when the 180 days begin to run in *Fex v. Michigan,* — U.S. ——, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). In *Fex,* the Supreme Court analyzed the wording of the Interstate Agreement on Detainers ("IAD") and held that the 180–day time period under the IAD begins to run

when the authorities in the receiving state receive the proper documentation required by the agreement. Following this standard, the petitioner herein correctly notes the 180 days began to run on June 18, 1993, the day the Wood County prosecuting attorney's office received the requisite information.

Moreover, the petitioner emphasizes, in the case of *Moore v. Whyte,* 164 W.Va. 718, 266 S.E.2d 137 (1980), this Court's recognition of the fact that the language in article V(c) relating to dismissal of an indictment, information or complaint, has been held to be mandatory.

In support of his primary argument, the petitioner argues that the circuit court erred by ruling that the petitioner's notice of his place of imprisonment and request for final disposition was vitiated by the petitioner's failure to issue a second notice of his place of imprisonment after the petitioner had been transferred by the Ohio Department of Rehabilitation and Correction from the Orient facility to the Chillicothe facility. Simply put, the petitioner argues that he does not have a duty to submit a second notice of his whereabouts after he was transported to a different facility. Unfortunately, the statute does not provide for the contingency of an inmate being moved from one facility to another in a correctional system, and this Court has never had the occasion to address this issue until now.

In *Maynard, supra,* Mingo County authorities had filed a detainer against the defendant and the defendant subsequently filed a notice of final disposition pursuant to the Agreement on Detainers. The defendant was initially imprisoned in Ohio, then in Indiana, and finally in Kansas. The major issue in that case was whether prohibition could be substituted for writ of error or appeal in challenging the dismissal of indictments. This Court held with respect to this issue and the facts of the case that prohibition was not the proper remedy to challenge the dismissal of indictments by the circuit court. However, the circuit court, in its findings with regard to the transferring of the defendant, held that the proper party (the Mingo County authorities) was aware of the fact that the accused had been transferred

from one state to another and the delay caused by the transfer should not be charged against the accused; thus, the circuit court stated that it had no choice but to dismiss the indictments pending in Mingo County. With regard to that conclusion of the circuit court, this Court held that there was no indication that the judge exceeded his legitimate powers in that the judge dismissed the indictments against the accused pursuant to specific provisions of the statute relating to detainers.

In *United States v. Mason,* 372 F.Supp. 651 (N.D.Ohio 1973), the United States District Court of Ohio more pointedly addressed the issue of whether there's a duty upon the defendant to submit an amended notice of his whereabouts following his transfer to another facility and submission of his request for final disposition. Therein, an indictment was dismissed against a defendant because he was not brought to trial within the mandatory 180-day time period required by the IAD. The defendant fulfilled the notification requirements and asked that the indictment be dismissed. The defendant was then transferred from Ohio to Michigan. The State argued that when the defendant was transferred, the defendant's original notification was void because Ohio was no longer the sending state. The court held that it would be inappropriate to require the prisoner to send two communications to the prosecution regarding his place of incarceration. The court further held that to locate the defendant is an additional burden on the government but to hold otherwise would be an onerous burden on the defendant. *See also Garner,* 274 Cal.Rptr. at 304 ("We also agree with [the defendant] that the San Diego prosecutors had an affirmative duty to keep track of [the defendant's] status.") (footnote omitted); *State v. Ferguson,* 41 Ohio App.3d 306, 311, 535 N.E.2d 708, 713 (Ct.1987) ("[T]here is first a burden on the defendant to substantially comply with the IAD request requirements by doing everything that could reasonably be expected. Once the defendant fulfills this burden, however, the burden is then placed upon the states to cooperate and bring the accused to trial within one hundred eighty days.")

However, failure to bring the accused to trial within 180 days does not always lead to an automatic dismissal of the indictment(s). The Supreme Court of Tennessee, in *Nelms v. State,* 532 S.W.2d 923 (Tenn.1976), was posed with the question of whether the State's failure to bring the defendant to trial within 180 days violated the IAD and voided the indictment. While the defendant was serving a sentence in Iowa, a grand jury in Tennessee returned an indictment against the defendant. The Tennessee authorities requested that the defendant be detained to face the charges pending against him in Tennessee. The defendant then submitted his request for final disposition. At the time the defendant's trial commenced, more than 180 days had passed, but yet his motion to dismiss the indictment was denied by the lower court and such ruling was affirmed by the Tennessee Court of Appeals. The Supreme Court of Tennessee found that a delay in a trial in excess of 180 days does not necessarily mandate dismissal of the indictment. The court cited the language of the IAD which states that if good cause is shown the court may grant any necessary or reasonable continuance; however, there was no motion for continuance in that case. Accordingly, the court held that the failure to bring the defendant to trial within the requisite time frame required dismissal of the indictment where there was no motion for continuance and the delay was not reasonable or necessary.

In the case herein, the transcripts reveal that respective counsel and the court recognized the availability of such a motion to the State. However, the State did not make such a motion. The petitioner ultimately requested a continuance so that the case would not be put on the lower court's docket, pending the outcome of this writ before this Court.

The State contends that the petitioner's notice was ineffective and thus the 180 days did not begin to run, because the petitioner failed to comply with article III of the agreement in that he did not give notice of his transfer to Chillicothe. The parties did not offer, and this Court was unsuccessful in finding, any authority which places a duty on the defendant to submit a second notice notifying the receiving state of his transfer to a different place of incarceration.

The State's argument is molded around the petitioner's duty to fully comply with the statutory requirements in order to qualify for relief under the agreement. The State relies on the case of *United States v. Reed,* 910 F.2d 621 (9th Cir.1990), where the defendant moved to have the indictment brought against him dismissed because the trial proceedings were instituted well over the 180–day time limit. The court in that case recognized that the purpose of the Interstate Agreement on Detainers Act is to provide a procedure by which a prisoner can demand a speedy disposition of the charges pending against him. The court then emphasized that the prisoner must strictly comply with the formal notice requirements in order to obtain relief under the agreement. However, the court noted that if the government has failed to meet its obligations under the agreement and the prisoner has attempted but failed, through no fault of his own, to comply with the technical requirements of the agreement, the remedial provisions of the agreement are still applicable. While the State cites to *Reed* and relies on that court's language regarding strict compliance by the prisoner, there is nothing in this opinion that is inconsistent with the results reached in that case.

Nevertheless, the State contends if the notice is considered not to be vitiated, the petitioner, who knew where he was located, should be charged with the delays. The State submits that it had no way of knowing where the petitioner was when the initial request for temporary custody was returned to the prosecuting attorney's office. Thus, the State concludes that the time period should be tolled until the date the State located the petitioner and the writ should be denied.

■ We find the State's argument to be without merit. The petitioner was in compliance with every exigency placed upon him under the agreement. The statute clearly sets forth what is required of the prisoner to be eligible for relief under the agreement. The statute, however, is silent as to what duty, if any, is imposed on the parties in-

volved in an Agreement on Detainers to locate or notify a prisoner who has been transferred from one place of incarceration to another.

The record illustrates that the State became aware of the petitioner's whereabouts by September 28, 1993, well within the 180-day time frame. It was after this day that the delays began to occur in the petitioner's case. For example, the prosecuting attorney's office failed to complete certain paperwork to finalize the petitioner's transfer to West Virginia. It was not until December 15, 1993, that all the formalities had been completed and the petitioner arrived in this State. The petitioner himself then instigated the first formal proceedings in Wood County by filing a motion to dismiss the indictments pursuant to the statutory agreement. This then ignited the State to pursue the petitioner's case and request a trial date for January 25, 1994, well beyond the 180-day time limit.

The State had the right and the opportunity to ask for a continuance in this case but failed to take advantage of this option. Based upon the above authorities, the failure of the State to bring the accused to trial within 180 days following the State's receipt of the petitioner's notice of imprisonment and request for final disposition of the case, pursuant to the Agreement on Detainers, *W.Va. Code*, 62–14–1, article III(a) and article V(c) [1971], mandates the dismissal of the indictments pending against the petitioner, where there was no motion for continuance made by the State and the delay was not reasonable or necessary.

For the reasons stated herein, the writ of prohibition is granted.

Writ granted.