563 S.E.2d 790

STATE of West Virginia, Plaintiff
Below, Appellee

v.

Dean E. GAMBLE, Defendant
Below, Appellant.

No. 29562.

Supreme Court of Appeals of
West Virginia.

Submitted Nov. 7, 2001.

Decided Dec. 12, 2001.

126

Darrell V. McGraw, Jr., Attorney General, Allen H. Loughry, II, Assistant Attorney General, Charleston, for Appellee.

Harley E. Stollings, Summersville, for Appellant.

McGRAW, Chief Justice:

Dean Gamble, defendant below, appeals the lower court's ruling sentencing him to one to three years in the penitentiary after his plea of guilty to a charge of attempted forgery. Although the lower court gave Mr. Gamble credit for one hundred six days that Mr. Gamble served in North Carolina correctional facilities in connection with crimes committed in that state, Mr. Gamble argues that he should have received additional credit for time served. For reasons set forth below, we affirm the decision of the circuit court.

## I.

## BACKGROUND

The convoluted history of this case winds through two states and several counties. On October 8, 1998, police in Nicholas County, West Virginia arrested the appellant Dean Gamble for the felony offenses of forgery and

uttering for signing and passing allegedly stolen checks at several stores in or near Summersville, West Virginia. About a week later, on October 16, 1998, Mr. Gamble posted bond, with his mother Clara Maillett acting as surety.

Mr. Gamble and several members of his family traveled to North Carolina where they were arrested on February 7, 1999 in connection with some other sort of illegal activity.[1] Authorities in North Carolina jailed Mr. Gamble, who apparently could not secure adequate bail to gain his release. His mother, who had also been arrested in North Carolina but had been released on bond, returned to West Virginia. Upon her return, she visited the Clerk of the Circuit Court of Nicholas County and requested the return of her bond that she had posted for her son back in October.

Pursuant to her request, the clerk gave Ms. Maillett a document known as a "bailpiece." The bailpiece is a document that evidences the intent of a surety to be relieved of his or her bond and is usually given in exchange for physical custody of the defendant in question.[2] In this case, Ms. Maillett sought the bailpiece because her son Mr. Gamble was in the custody of the North Carolina authorities. Ms. Maillett states that she informed the sheriff's department, who then informed the prosecuting attorney's office, of the location of her son and his desire to return to West Virginia to face the charges pending against him.

Complicating this picture further is the fact that Nicholas County was not the only place in West Virginia where Mr. Gamble had experienced an encounter with law enforcement authorities. The record indicates that Mr. Gamble had been stopped in Fayette County, West Virginia for driving when his license had been revoked for DUI. As a result of that stop, Mr. Gamble was charged with second offense driving while his license was revoked for DUI, obstructing an officer, and carrying a weapon without a license.[3]

On April 22, 1999, the Fayette County Prosecuting Attorney's Office wrote a letter to the officials at the Wake County Jail. The letter noted that it was to serve as a detainer against Mr. Gamble for the charges he faced in Fayette County. It made no mention of the Nicholas County charges. Mr. Gamble claims that he waived extradition to West Virginia on April 28, 1999, after receiving the detainer letter. It is not clear from the record if Mr. Gamble ever produced an official "request for final disposition form" at this time.[4] All that is clear from the record is that Mr. Gamble remained incarcerated in North Carolina to face the charges pending against him there, and that authorities in Nicholas County, West Virginia did not place a hold or detainer upon Mr. Gamble until September 15, 1999.

On October 21, 1999, the North Carolina authorities acted on Mr. Gamble's case, ruling that he had served adequate time for charges filed against him in Wake County, North Carolina, and sentencing him to probation for crimes committed in Johnson County, North Carolina. A few weeks later, authorities returned Mr. Gamble to West Virginia, where he secured his release on bond on November 5, 1999. Mr. Gamble apparently remained free on bond until August 18, 2000, when he signed an agreement pleading guilty to the felony offense of attempted forgery. The court accepted the

---

1. The record indicates that Mr. Gamble faced at least two charges in Wake County, North Carolina and faced eight misdemeanor check-related charges in Johnson County, North Carolina.

2. It appears that Ms. Maillett secured her son's release by offering a piece of real property for security, on which a lien was placed. It is unclear when, or if, this lien was removed.

3. The record in this appeal does not indicate the date of this alleged incident, but the record does reveal that Mr. Gamble eventually plead guilty to a misdemeanor charge of driving while his license was revoked for DUI on January 10, 2000,

and that the Circuit Court of Fayette County imposed, on January 21, 2000, a fine of $2000 and a jail term of one year. It further appears from the record that Mr. Gamble attempted to appeal this sentence, and that this Court refused his petition on September 7, 2000. It remains unclear how this sentence has affected the one to three year sentence imposed by the Circuit Court of Nicholas County.

4. As we noted above, the question of the speed at which the Fayette County authorities acted in Mr. Gamble's case is not a issue in this appeal.

plea, convicted Mr. Gamble, and subsequently, on October 6, 2000, sentenced Mr. Gamble to the penitentiary for a period of not less than one year, nor more than three years, with credit for 106 days of time served.

It appears from the record that the 106–day credit granted was for time Mr. Gamble served after the filing of the Nicholas County detainer on September 15, 1999, until his release on November 5, 1999 (a little over 50 days), and for time he served between the signing of his plea agreement on August 18, 1999, and his sentencing on October 6, 1999 (also a little over 50 days), for a total of 106 days. At issue in this appeal is whether the Nicholas County Prosecuting Attorney should have acted sooner in seeking Mr. Gamble, or whether the lower court should have granted Mr. Gamble credit for time he served in North Carolina between the dates of March 18, 1999, the date on which his mother requested the bailpiece, and September 15, 1999, the first day for which he has already received credit for time served.

## II.

### STANDARD OF REVIEW

■ In this case we are asked to review the lower court's interpretation of various statutes. In such cases, our standard of review is clear: "Where the issue on an appeal from the circuit court is clearly a question of law or involving an interpretation of a statute, we apply a *de novo* standard of review." Syl. pt. 1, *Chrystal R.M. v. Charlie A. L.*, 194 W.Va. 138, 459 S.E.2d 415 (1995). Or in other words, "[i]nterpreting a statute or an administrative rule or regulation presents a purely legal question subject to *de novo* review." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dep't of West Virginia*, 195 W.Va. 573, 466 S.E.2d 424 (1995).

We have before considered our standard of review in cases such as this:

[I]n *State ex rel. Modie v. Hill*, 191 W.Va. 100, 443 S.E.2d 257 (1994), we recognized that "the Agreement on Detainers, *W. Va. Code*, 62–14–1, *et seq.*, [i]s an interstate compact to which the State is a party by statutory enactment." 191 W.Va. at 102, 443 S.E.2d at 259. As the United States

Supreme Court has stated, "[t]he Agreement is a congressionally sanctioned interstate compact within the Compact Clause, U.S. Const., Art. I, § 10, cl. 3, and thus is a federal law subject to federal construction." *Carchman v. Nash*, 473 U.S. 716, 719, 105 S.Ct. 3401, 87 L.Ed.2d 516 (1985).

*State v. Somerlot*, 209 W.Va. 125, 128, 544 S.E.2d 52, 55 (2000) (footnote omitted). Bearing these standards in mind, we turn to an analysis of Mr. Gamble's arguments.

## III.

### DISCUSSION

Mr. Gamble makes two assignments of error. He argues that the lower court should have found that the Nicholas County Prosecuting Attorney had a duty to seek his return from North Carolina prior to September 15, 1999. He also claims that the lower court erred when it did not grant him credit for time served between March 18, 1999 and September 15, 1999. Mr. Gamble predicates this argument upon our bailpiece statute and upon the Interstate Agreement on Detainers, discussed *infra*.

■ First Mr. Gamble argues that the plain language of our bailpiece statute required the state to seek his return in a speedier fashion than transpired in this case. The language of the section he cites reads:

A bailpiece is a certificate stating that the bail became such for the accused in a particular case and the amount thereof. Upon demand therefor, the court, justice [magistrate] or clerk shall issue to the surety a bailpiece. Any officer having authority to execute a warrant of arrest shall assist the surety holding such bailpiece to take the accused into custody and produce him before the court or justice [magistrate]. The surety may take the accused into custody and surrender him to the court or justice [magistrate] without such bailpiece.

W. Va.Code § 62–1C–14 (1965).

Mr. Gamble states that his mother requested the bailpiece on March 18, 1999, and that she then informed the Nicholas County Sheriff's Department that Mr. Gamble was incarcerated in North Carolina. Mr. Gamble

also states that the sheriff's office then informed the Nicholas County Prosecuting Attorney's Office of the same. Mr. Gamble maintains that by providing this information to the sheriff's office, and ultimately to the prosecuting attorney's office, his mother's efforts triggered, under the Interstate Agreement Detainers (the "IAD"), an obligation on the part of the prosecuting attorney to seek his return from North Carolina sooner than September 1999.

■ We have been asked to interpret the state's obligations under the IAD on several occasions:

> We have defined the Agreement on Detainers, *W. Va.Code,* 62–14–1, *et seq.,* as an interstate compact to which the State is a party by statutory enactment. *State ex rel. Maynard v. Bronson,* 167 W.Va. 35, 277 S.E.2d 718 (1981). The purpose of the Agreement on Detainers, as set forth in article I of the agreement, is to encourage the expeditious and orderly disposition of outstanding criminal charges and the determination of the status of detainers based upon untried indictments, informations or complaints. *Id. See also People v. Garner,* 224 Cal.App.3d 1363, 274 Cal.Rptr. 298 (1990).

*State ex rel. Modie v. Hill,* 191 W.Va. 100, 102, 443 S.E.2d 257, 259 (1994). In short, the IAD places certain obligations upon officials in the "charging state" (to which the incarcerated seeks to return) once a prisoner complies with certain requirements of the statute. The prisoner must comply with the following:

> (a) Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the prisoner, he shall be brought to trial within one hundred eighty days *after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his im-*prisonment and his request for a final disposition to be made of the indictment, information or complaint:* Provided, That for good cause shown in open court, the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance. The request of the prisoner shall be accompanied by a certificate of the appropriate official having custody of the prisoner, stating the term of commitment under which the prisoner is being held, the time already served, the time remaining to be served on the sentence, the amount of good time earned, the time of parole eligibility of the prisoner, and any decisions of the state parole agency relating to the prisoner.

> (b) The written notice and request for final disposition referred to in paragraph (a) hereof shall be given or sent by the prisoner to the warden, superintendent or other official having custody of him, who shall promptly forward it together with the certificate to the appropriate prosecuting official and court by registered or certified mail, return receipt requested.

W. Va.Code § 62–14–1 (1971) (emphasis added). Once the prisoner has complied with the above, officials in the charging state have an obligation to take reasonably prompt action against the prisoner/defendant. Mr. Gamble calls our attention to the following:

> Where one indicted for a felony in this state has been incarcerated in another state, the prosecuting authorities in this jurisdiction, pursuant to the provisions of W. Va.Code, 1931, 62–14–1, as amended, are under a mandatory duty to apply to the authorities of the incarcerating state for temporary custody of said accused for the purpose of offering him a speedy trial and the failure of the state to so act will cause the terms during which he was so imprisoned to be chargeable against the state under W. Va.Code, 1931, 62–3–21, as amended.[5]

Syl. pt. 2, *State ex rel. Stines v. Locke,* 159 W.Va. 292, 220 S.E.2d 443 (1975).

In order for Mr. Gamble's argument to succeed under the IAD, we would first have

---

5. The cited statute provides the basis for the so-called "three term rule."

Every person charged by presentment or indictment with a felony or misdemeanor, and

to accept his mother's request for a bailpiece to have been the functional equivalent of "written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint," required by W. Va.Code § 62–14–1 Art. III(a) (1971). We are disinclined to accept this argument.

■ Mr. Gamble is correct that the IAD, once triggered, places an obligation on authorities in this state to deal promptly with a prisoner incarcerated in another state, provided that the prisoner has met the requirements of the statute: "*W. Va.Code* 62–3–21 [1959], imposes a duty on the State to exercise reasonable diligence to procure temporary custody of the defendant who has fled the State for the purpose of offering him a speedy trial once the defendant's out-of-state whereabouts become known." Syl. pt. 2, *State ex rel. Boso v. Warmuth,* 165 W.Va. 247, 270 S.E.2d 631 (1980), *overruled on other grounds, State ex rel. Sutton v. Keadle,* 176 W.Va. 138, 342 S.E.2d 103 (1985). And we also agree that prompt return of an out-of-state prisoner charged with an in-state crime serves the interest of justice:

> While the rehabilitative value of imprisonment may be speculative, the therapeutic value of the aging process has never been questioned; consequently, it is reasonable to infer that getting older will make transgressors less anti-social. In order for rehabilitation or some combination of rehabilitation and getting older to make sense, it is only logical that transgressors should be shown the consideration of disposing of all of their transgressions simultaneously so that they shall not be compelled to endure their confinement with the constant specter of old cases destroying new lives.

*Id.* 165 W.Va. at 252, 270 S.E.2d at 634. However, we must also point out that this Court, and others, must follow the lead of the United States Supreme Court in interpreting the IAD. "Because resolution of the issue presents a federal question subject to federal construction and interpretation, we begin by examining the pertinent federal law." *State v. Somerlot,* 209 W.Va. 125, 129, 544 S.E.2d 52, 56 (2000) (footnote omitted).

In *Somerlot,* on December 12, 1996, the Preston County Sheriff's Department filed a complaint alleging that Mr. Somerlot committed a burglary in Preston County on or about June 27, 1996. Based upon this complaint, the magistrate issued an arrest warrant. On December 27, 1996, Mr. Somerlot began serving a two-year prison term in Ohio. On October 1, 1997, the Preston County Sheriff's Department informed the Ohio authorities of interest in Mr. Somerlot, and requested notification of his release. The parties considered this to be equivalent to filing a detainer. A week later, on October 8, 1997, Mr. Somerlot signed an official form entitled "Inmate's Notice of Place of Imprisonment and Request for Disposition of Indictments, Informations, or Complaints," which prison officials then sent on to the Prosecuting Attorney of Preston County. However, the prison officials, "neglected to send the same document to the Preston County Circuit Clerk's Office, despite the fact that the form itself designates one copy for this express purpose." *Id.* 209 W.Va. at 126–27, 544 S.E.2d at 53–54(2000).

remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict; and every person charged with a misdemeanor before a justice of the peace [magistrate], city police judge, or any other inferior tribunal, and who has therein been found guilty and has appealed his conviction of guilt and sentence to a court of record, shall be forever discharged from further prosecution for the offense set forth in the warrant against him, if after his having appealed such conviction and sentence, there be three regular terms of such court without a trial, unless the failure to try him was for one of the causes hereinabove set forth relating to proceedings on indictment.

W.Va.Code § 62–3–21 (1959). We note that, in this appeal, Mr. Gamble does not argue a violation of the "three term rule." It appears that he may have attempted this argument in a petition to this Court in connection with the Fayette County charges, which this Court refused.

This Court first reviewed the decision of the United States Supreme Court in *Fex v. Michigan*, 507 U.S. 43, 113 S.Ct. 1085, 122 L.Ed.2d 406 (1993). We discussed that case at some length in *Somerlot*, but in summary, the prisoner in *Fex*, had given a "request for final disposition" to the prison officials where he was held in Indiana, who somewhat delayed the transmission of the request to the State of Michigan. Subsequently the prisoner was brought to trial in Michigan 196 days after he gave his "request for final disposition" to the Indiana prison officials, but only 177 days after the request for final disposition was received by the Michigan prosecuting attorney and court. The United States Supreme Court ruled against the prisoner because, based upon the date his request was actually delivered, the 180-day limit was not violated. *See Somerlot, supra.*

 Following the lead of the superior tribunal, this Court decided in *Somerlot* that strict compliance with every requirement of the statute is mandatory before a prisoner can receive its benefits:

> Consistent with the decision of the United States Supreme Court in *Fex*, as well as the majority of other jurisdictions which have addressed the issue sub judice, we agree that a prisoner must strictly comply with the procedures set forth in the IADA before the 180-day time limit is triggered.

*State v. Somerlot*, 209 W.Va. 125, 132, 544 S.E.2d 52, 59 (2000). Thus we determined in Mr. Somerlot's case that even though he had mailed his official "request for a final disposition" to the prosecuting attorney, Mr. Somerlot had still failed to meet the strict requirements of the statute because he had not "caused to be delivered" his notice "to the prosecuting officer *and the appropriate court.*" W. Va.Code § 62–14–1 Art. III(a) (1971). We ultimately held:

> The 180-day time period set forth in Article III(a) of the Interstate Agreement on Detainers Act, West Virginia Code §§ 62–14–1 to –7 (2000), does not commence until the prisoner's request for final disposition of the charges against him has actually been delivered to the court and to the prosecuting officer of the jurisdiction that lodged the detainer against him.

Syl. pt. 2, *State v. Somerlot*, 209 W.Va. 125, 544 S.E.2d 52 (2000).

 In light of our strict interpretation of the statute in *Somerlot*, we are unwilling to accept Mr. Gamble's tacit argument that we should provide a liberal construction to his mother's actions in requesting a bailpiece, and consider her actions the functional equivalent of an official "request for a final disposition." Thus, we hold that where an accused party is free on bail from a West Virginia jurisdiction, but incarcerated in another state, a request by that accused party's surety for a bailpiece under W. Va.Code § 62–1C–14 (1965), does not act as the accused party's "written request for a final disposition" as required by the Interstate Agreement on Detainers, W. Va.Code § 62–14–1, *et seq.* (1971). We note that once the authorities in Nicholas County did, in September 1999, contact the authorities in North Carolina and place a detainer upon Mr. Gamble that he received the protections of the IAD thereafter. We do not believe that the prosecuting attorney had any duty to act any earlier to retrieve Mr. Gamble.

 Having disposed of Mr. Gambles first assignment of error, that the prosecutor had some duty to act sooner, we can likewise dispose of Mr. Gamble's second argument, that he is entitled to time served in North Carolina between March 18 and September 15, 1999. We note that he did receive credit for this time against his North Carolina charges, and that the lower Court granted Mr. Gamble credit for every day of time served after the detainer was issued on September 15, 1999. Having found that the prosecutor had no duty to act before that time, we see no basis for awarding Mr. Gamble any additional credit for time served in North Carolina prior to September 15, 1999.

## IV.

## CONCLUSION

For the reasons stated, the judgment of the Circuit Court of Nicholas County is affirmed.

Affirmed.