388 S.E.2d 316

STATE of West Virginia

v.

Steve ADKINS.

STATE of West Virginia

v.

GOODWILL MOTORS, INC., a Corporation, Jack Webb, Joey Kohari, and Hugh Wellman.

STATE of West Virginia

v.

Irvin "K.O." DAMRON.

STATE of West Virginia

v.

Samuel KAPOURALES.

STATE of West Virginia

v.

Robert SIMPKINS.

STATE of West Virginia

v.

Paul SIZEMORE.

STATE of West Virginia

v.

R. Doyle VAN METER, II.

STATE of West Virginia

v.

W. Thomas WARD.

Nos. 19255–19262.

Supreme Court of Appeals of West Virginia.

Dec. 20, 1989.

Frederick P. Stamp, Jr., Sp. Pros. Atty., Williamson, for State of W. Va.

Robert B. King, Sherri Goodman Dusic, King, Betts & Allen, Charleston, for Steve Adkins, Samuel Kapourales, Robert Simpkins, Paul Sizemore.

Cecil C. Varney, Williamson, for Goodwill Motors, Inc., a corp., Jack Webb, Joey Kohari, and Hugh Wellman.

Robert C. Chambers, Chambers, Chambers & Heilmann, Huntington, for Irvin "K.O." Damron.

James M. Casey, Point Pleasant, for R. Doyle Van Meter, II.

W. Warren Upton, Stephen B. Farmer, Jackson & Kelly, Charleston, for W. Thomas Ward.

BROTHERTON, Chief Justice:

This case involves eight consolidated appeals brought by the State of West Virginia from the Honorable Robert Halbritter's dismissal of the indictments returned in Mingo County, West Virginia, on June 3, 1989.

On April 7, 1988, a special grand jury in Mingo County, West Virginia, returned a true bill against the appellees, defendants below, indicting each defendant for misdemeanor and felony election law violations codified in W.Va.Code §§ 3–8–12, 3–8–5, 3–8–5(a), 3–8–5(d), and 3–8–8 (1987), in connection with the 1984 primary election in Mingo County. These indictments occurred at the end of the January, 1988, term of the Circuit Court of Mingo County.

Following the indictments, the defendants below filed various motions, including motions to quash, dismiss, and sever the indictments, and motions for a speedy trial. On May 11 and 12, 1988, the Honorable Patrick Henry, Special Judge of the Circuit Court of Mingo County, held hearings on these motions. Pursuant to the court's request, several defendants filed supplemental briefs in support of their motions with the court in late May, 1988. The State did not respond to these motions, nor did the court rule on the motions. No action was taken to move the indictments to trial or initiate further proceedings.

In late May, 1989, several defendants filed motions with Judge Henry to dismiss the indictments for the State's failure to provide a speedy trial pursuant to W.Va. Code § 62–3–21 (1989). By this point, the April, 1988, term, September, 1988, term, and January, 1989, term of the Circuit

Court of Mingo County had passed and the court was in the April, 1989, term.

On June 3, 1989, Special Prosecutors Stamp and Gurley sought and obtained superseding indictments from a newly impaneled special grand jury in Mingo County.[1] The new indictments alleged the same misdemeanor offenses as were contained in the earlier 1988 indictment, although it declined prosecution on the 1988 felony counts.

On June 8, 1989, the Honorable Robert C. Halbritter, Circuit Judge of Preston County, West Virginia, was appointed special judge to preside over the 1989 indictments. On June 9, 1989, the State moved to dismiss the 1988 indictments without prejudice, claiming that these indictments had been superseded by the June 3, 1989, indictments. On June 30, 1989, Judge Henry issued an order, based upon the earlier motions of the defendants, and dismissed the original April 7, 1988, indictments due to improper impaneling of the earlier special grand jury.

In June, 1989, the defendants filed motions to dismiss the new 1989 indictments on the grounds that trials on the 1989 indictments were barred as a subsequent prosecution under the three term rule. Specifically, the defendants contended that at the time Judge Henry dismissed the original indictments, more than three terms had passed since the indictments were returned. Consequently, the State was statutorily prohibited from pursuing the 1989 superseding indictments.

On July 12, 1989, Judge Halbritter heard arguments on the defendants' motion to dismiss the new indictments. In separate orders dated between July 12 and July 31, 1989, Judge Halbritter dismissed the superseding indictments as barred by the three term rule.[2]

Consequently, the issue before this Court is to determine whether the indictments

---

**1.** In November, 1988, Frederick Stamp and Terence Gurley were appointed to replace the original Special Prosecutor, James Colburn.

**2.** Similarly, in *State v. Rumora,* Criminal Action Nos. SGJ–F–17–22, the Honorable Thomas Canterbury, Special Circuit Judge of Mingo County for the purpose of presiding over that indictment, ruled on September 28, 1989, that the three term rule applied.

dismissed by Judge Halbritter in July, 1989, were "bad or insufficient," as required by W.Va.Code § 58–5–30, so as to allow the State to appeal the dismissal. Simply put, the State argues that because the original indictments were bad due to improper impaneling of the grand jury, and the second indictments were dismissed because three terms had passed from the original 1988 indictment before it was dismissed, the superseding indictments must likewise be bad, thus permitting an appeal by the State. We disagree, and for the reasons stated below, we affirm Judge Halbritter's orders dated July 12, 1989, July 21, 1989, and July 31, 1989, for the eight appellees involved in this appeal.

The underlying purpose of W.Va.Code § 62–3–21 (1989) is to provide a statutory method of guaranteeing the constitutional right to a speedy trial found in Article III, § 14 of the West Virginia Constitution, as well as a legislative declaration of what is a reasonable and proper delay in bringing an accused to trial. *Hollandsworth v. Godby,* 93 W.Va. 543, 117 S.E. 369 (1923), *overruled on other grounds, State ex rel. Sutton v. Keadle,* 176 W.Va. 138, 342 S.E.2d 103, 106 (1985).[3] Specifically, W.Va.Code § 62–3–21 (1989) provides that:

Every person charged by presentment or indictment with a felony or misdemeanor, and remanded to a court of competent jurisdiction for trial, shall be forever discharged from prosecution for the offense, if there be three regular terms of such court, after the presentment is made or the indictment is found against him, without a trial, unless the failure to try him was caused by … a continuance granted on the motion of the accused. …

Our inquiry, however, is concerned with an analysis of the State's right to appeal rather than a review of the three term rule.[4]

It is a basic premise of criminal law that the State's right to appeal an adverse ruling rests solely upon specific statutory or constitutional authority.[5] In *Carroll v. United States,* 354 U.S. 394, 400, 77 S.Ct. 1332, 1336, 1 L.Ed.2d 1442, 1447 (1957), the United States Supreme Court found that:

appeals by the Government in criminal cases are something unusual, exceptional, not favored. The history shows resistance of the Court to the opening of an appellate route for the Government until it was plainly provided by the Congress, and after that a close restriction of its uses to those authorized by the statute.[6]

---

**3.** *See also State ex rel. Farley v. Kramer,* 153 W.Va. 159, 169 S.E.2d 106, 113, *cert. denied* 396 U.S. 986, 90 S.Ct. 482, 24 L.Ed.2d 451 (1969), in which this Court found that the underlying purpose of this Code section is to assure to one accused of a crime his constitutional right to a trial without undue delay.

**4.** Given our holding in this case, we need not delve into what constitutes a continuance granted on the motion of the accused. We point out, however, for purposes of understanding the procedural background of this case, that the statute provides that the term in which the indictment is brought is not counted in the three term calculation. Further, it has generally been held that the phrase "on the motion of the accused" does not require a formal motion to be made by the defendant. *State ex rel. Spadafore v. Fox,* 155 W.Va. 674, 186 S.E.2d 833, 836 (1972). In *State ex rel. Farley v. Kramer,* 153 W.Va. 159, 169 S.E.2d 106, 115 (1969), *cert. denied,* 396 U.S. 986, 90 S.Ct. 482, 24 L.Ed.2d 451 (1969), this Court held that where the defendant "instigates a proceeding which forces a continuance of the case at a particular term of court, he will not be permitted to take advantage of the delay thus occasioned." Finally, in *Spadafore,* this Court

reiterated that "where a court does not have time for the disposition of motions or pleas filed by the accused and a term passes as a result thereafter, such term cannot be counted as one of the three terms under the provisions of Code, 62–3–21, as amended." 186 S.E.2d at 836.

**5.** *See Arizona v. Manypenny,* 451 U.S. 232, 246–47, 101 S.Ct. 1657, 1667, 68 L.Ed.2d 58, 71–72 (1981), where the Court noted that the "presumption that the prosecution lacks appellate authority absent express legislative authorization" reflected "an abiding concern to check the Federal Government's possible misuse of its enormous prosecutorial powers. By insisting that Congress speak with a clear voice when extending to the Executive a right to expand criminal prosecutions, *Sanges* and its subsequent applications have placed responsibility … in the democratically elected legislature where it belongs." *See also United States v. Sanges,* 144 U.S. 310, 12 S.Ct. 609, 36 L.Ed. 445 (1892).

**6.** The federal courts allow a broader range of appeals by the prosecution than many states since federal legislation permits appeals from

Consequently, absent statutory or constitutional language to the contrary, the State's right to appeal an adverse ruling in a criminal matter is limited.

The West Virginia Legislature has chosen to narrow the State's right to appeal an adverse judgment in a criminal matter to two specific circumstances.[7] West Virginia Code § 58–5–30 (1966) provides, in pertinent part, that:

> Notwithstanding anything hereinbefore contained in this article, whenever in any criminal case an *indictment* is held *bad or insufficient* by the judgment or order of a circuit court, the State, on the application of the attorney general or the prosecuting attorney, may obtain a writ of error to secure a review of such judgment or order by the supreme court of appeals. (Emphasis added.)[8]

Other than the constitutional provision found in Article VIII, § 3 of the West Virginia Constitution permitting an appeal in matters dealing with the public revenue, no other avenue of criminal appeal is available to the State.

■ The State's right to appeal an adverse criminal ruling was previously discussed in *State v. Jones*, 178 W.Va. 627, 363 S.E.2d 513 (1987), in which this Court dismissed an appeal as improvidently awarded where the State did not file a petition for appeal within thirty days from the entry of the order dismissing the indict-

ment. Although the Court found that the State had not filed within the statutory time period and made no specific finding on the State's right to appeal, the Court discussed the issue at some length:

> [o]ur law is in accord with the general rule that the State has no right of appeal in a criminal case, except as may be conferred by the Constitution or a statute.... Statutes giving the right of appeal to the State are also subject to scrutiny under constitutional double jeopardy principles.

*Id.* 178 W.Va. at 628–629, 363 S.E.2d at 514. After pointing out that "it is questionable whether an appeal under W.Va. Code, 58–5–30 lies where the issue is something other than a defective indictment," the Court noted that it has been reluctant to judicially enlarge the limited right of a state to appeal in a criminal case. *Id.* 178 W.Va. at 629, 363 S.E.2d at 515, 516. Thus, since the allegation in the *Jones* case had nothing to do with the sufficiency of the indictment, the Court intimated the State had no right to appeal.[9]

■ Consistent with our reasoning in *Jones*, we refuse to judicially enlarge the limited right of the State to appeal in this criminal case. Notwithstanding the encroachment upon the legislative preserve, such an action would create a dangerous precedent for this Court in usurping the legislative power to create law. Any

---

the dismissal of any indictment. 18 U.S.C.A. § 3731 (1985) provides that:

> In a criminal case an appeal by the United States shall lie to a court of appeals *from a decision, judgment, or order of a district court dismissing an indictment or information* or granting a new trial after verdict or judgment as to any one or more counts, except that no appeal shall lie where the double jeopardy clause of the United States Constitution prohibits further prosecution. (Emphasis added.)

**7.** Other states have provided varying degrees of appealability for the prosecution based upon their legislative enactments.

> While state provisions commonly authorize prosecution appeals from at least some pretrial rulings that would fall in the final judgment category, they vary substantially in scope. Some apply to all such rulings. They refer either to appeals from all "final judgments," or (as in the federal provision) from

all "dismissals of an indictment or information ... as to one or more counts."

W. LaFave and J. Israel, *Criminal Procedure* § 26.3(b) (West 1985).

**8.** Similarly, this Court noted in *State v. Bailey*, 154 W.Va. 25, 173 S.E.2d 173, 175 (1970), that the jurisdiction of the Supreme Court of Appeals is fixed by the Constitution and statutes and there can be no appeal except in cases warranted by the Constitution or statute.

**9.** *See also State ex rel. Maynard v. Bronson*, 167 W.Va. 35, 277 S.E.2d 718 (1981), where the Court found no authority which would allow the State to utilize a writ of prohibition to prevent the dismissal by the Circuit Court of Mingo County of an indictment against the accused where the judge had jurisdiction of the subject matter in controversy and nothing in the record indicated that he had exceeded his legitimate powers. The Court noted that nothing in the case involved the public revenue or bad or

change in the State's right to appeal an adverse criminal ruling must come from the legislature itself.[10]

Moreover, we refuse to broaden the definition of "bad or insufficient" to encompass this situation as the State requests. Given its plain and ordinary meaning, the phrase "bad or insufficient" cannot be enlarged to cover a situation such as this, in which the prosecution rather than the underlying indictment itself was bad. Regardless of the result of Judge Halbritter's orders, W.Va.Code § 58–5–30 forbids an appeal by the State from an order dismissing an indictment unless that indictment could be categorized as "bad or insufficient." It is undisputed that the 1989 special grand jury was properly impaneled and the indictments were valid. Judge Halbritter's 1989 dismissal orders were based upon the State's failure to prosecute the 1988 indictments within the three terms required by statute. Consequently, because the superseding indictments occurred in the fourth term of the original 1988 indictments, and the 1989 indictments that are the subject of this action were the same charges brought in the 1988 indictments, we have no choice but to affirm the dismissal orders.[11] To hold otherwise would allow the State to simply circumvent the three term rule by securing superseding indictments.

We are not unmindful of the fact that the people in Mingo County and West Vir-

ginia in general may feel that the legal system has failed them. People often believe that their government provides less than exemplary service and they tend to be suspicious of the integrity of government officials. Unfortunately, we fear this decision may tend to further harden these suspicions. We hope not, for the rules that we rely upon in this opinion which work in favor of these defendants also work to the favor of all the citizens of this State.

Our power to act in this matter goes only as far as the State's right to appeal. We can go no further. Certainly, we could have adopted the State's argument that "bad" should be interpreted to mean "bad" for the procedural dismissal of an indictment as well as a dismissal for substantive reasons. To do so, however, would be radical departure from the statutes and case law of this State. We believe that the State is limited in its appeals on criminal indictments to the strict language spelled out by the legislature in W.Va.Code § 58–5–30. Regardless of the magnitude of the corruption of some public officials in this State, an expansion of that statutorily defined right by this Court would violate the due process rights of not only these defendants, but all the citizens of this State. It is this Court's duty to interpret legislation, not write it.

This is not to say we are blameless. We are the supervisor of the unified court system and as such, we must accept responsi-

---

insufficient indictments against the accused. *Id.* 167 W.Va. at 43, 277 S.E.2d at 722–23.

**10.** In *Kott v. State,* 678 P.2d 386 (Alaska 1984), the Alaska Court held that an appeal could not be taken by the State to contest a final order which dismissed the State's prosecution on the basis that it was barred by the doctrine of collateral estoppel. The Alaska statute, which is similar to the West Virginia statute, provides: "[t]he state has no right to appeal in criminal cases except to test the sufficiency of the indictment or information or to appeal a sentence on the ground that it is too lenient." AS 22.07.020(d). *Id.* at 388. After analyzing the Alaska statute, the *Kott* Court held that "[w]e cannot agree that AS 22.07.020(d)(2) merely mimics the double jeopardy clause. On its face, the statute prohibits appeals except appeals testing the sufficiency of the indictment, information or by extension, complaint. Numerous other jurisdictions, in interpreting similar statutes, have held that the

states' right to appeal is sharply circumscribed." *Id.* at 389.

**11.** Superseding indictments involving the same charges which occur in the fourth term after the original indictment will not toll the three term statute unless the State can show an exception to the rule set out in W.Va.Code § 62–3–21. West Virginia Code § 62–3–21 (1989) specifically provides that the three term rule will be tolled if the State can show, to the court's satisfaction, one of the following exceptions:

the failure to try him was caused by his insanity; or by the witnesses for the State being enticed or kept away, or prevented from attending by sickness or inevitable accident; or by a continuance granted on the motion of the accused; or by reason of his escaping from jail, or failing to appear according to his recognizance, or of the inability of the jury to agree in their verdict....

bility for the failures in our system.[12] The failures, unfortunately, are all too obvious. We point to the failure of a judge to properly oversee the impaneling of the grand jury, the failure of a prosecutor to properly assist a judge in impaneling a grand jury, the problem of special judges who handle only bits and pieces of the total investigation, judges and prosecutors who conduct themselves in such a manner that they can no longer remain active in the cases growing out of the grand jury investigation, special judges who accept assignments to help with the arraignment of the various defendants and then unreasonably delay in rendering their decision at a time when the situation calls out for a speedy trial, and prosecutors who failed to act, even after this Court ruled, some ten months ago, that the original indictments were bad because of the method used in calling the grand jury.

Because of this neglect, these cases cannot now be brought to trial, where the defendants' guilt or innocence should have been ultimately decided.[13] No reason was presented either by the court below or the State as to why the motions made by the defendants were never ruled upon, answered, or the indictments set for trial. Nor did the State explain why it waited so long to dismiss the clearly "bad" 1988 indictments and reconvene the Special Grand Jury to reindict the defendants properly. Compounding the problem is the speculation that the State's purpose in the delay was to prolong the embarrassment and humiliation attendant to criminal prosecution. *See United States v. Wilson*, 420 U.S. 332, 343, 95 S.Ct. 1013, 1022, 43 L.Ed.2d 232, 241 (1975). The speedy trial guarantee in both the Constitutions of the United States and West Virginia was meant to prevent such an abuse of power.

While perhaps not a function of a court, the increasing number of public officials involved in corruption during the past few years, a plague which touches the very core of our government's credibility, compels us to suggest legislative changes that might aid in the restoration of the citizens' faith in their government. The first would be to amend W.Va.Code § 58–5–30 to permit the State a broader right of appeal from the rulings of a circuit judge to this Court. Secondly, serious consideration should be given to the creation of an independent state prosecutorial system with statewide jurisdiction and adequate funding for staffing and investigations. It is clear the county prosecutors are no longer capable of handling the complex types of white collar and drug-related crimes that extend beyond county boundaries. The funding which is provided by each county precludes lengthy investigations and makes it almost impossible to obtain material testimony and evidence located across county lines. We believe now is the time to propel this State forward into the 21st century.

Accordingly, for the foregoing reasons we affirm Judge Halbritter's final orders dismissing these indictments.

Affirmed.

---

**12.** We would commend, however, Judge Ronald Wilson, who undertook the assignment of special judge in Mingo County and performed his duties promptly in every aspect.

**13.** In *State ex rel. Workman v. Fury*, 168 W.Va. 218, 283 S.E.2d 851 (1981), this Court ruled that the State has the burden to show affirmatively that an excuse for the violation of W.Va.Code § 63–3–21 exists. *Id.* 168 W.Va. at 221, 283 S.E.2d at 853.