567 S.E.2d 624

**STATE of West Virginia, Plaintiff below, Appellee,**

v.

**William BRAHAM, Defendant below, Appellant.**

**No. 30247.**

Supreme Court of Appeals of West Virginia.

Submitted June 5, 2002.

Decided June 27, 2002.

---

Darrell V. McGraw, Jr., Attorney General, Heather D. Foster, Assistant Attorney General, Charleston, West Virginia, for appellee.

William L. Pennington, Morgantown, West Virginia, for appellant.

STARCHER, Justice.

In the instant case, we reverse the appellant's conviction on a charge of fraudulent schemes because the State's evidence did not show beyond a reasonable doubt that the appellant had the requisite criminal intent.

## I.

### Facts & Background

The appellant William Braham appeals his May 8, 2001 conviction in the Circuit Court of Monongalia County for violating *W.Va.Code,* 61–3–24d [1995], the offense of "fraudulent schemes." This statute reads in pertinent part as follows:

> (a) Any person who willfully deprives another of any money, goods, property or services by means of fraudulent pretenses,

representations or promises shall be guilty of the larceny thereof.

The appellant was charged with violating this statute by cashing a number of checks at a bar in Morgantown. Most of the checks were post-dated. When the checks were presented to the bank, before and after the dates on the checks, there were no funds in the account to cover the checks. The appellant asserts a number of grounds for the reversal of his conviction. We discuss several of these grounds hereinafter and include in our discussion the relevant facts.

## II.

### Standard of Review

■ All of the issues raised by the appellant are purely legal determinations that we address *de novo*.

## III.

### Discussion

#### A.

### Admission of Deposition

■ Approximately a month before the appellant's trial, the prosecutor indicated to the defendant's counsel that a prosecution witness, an employee of the bar where the appellant had cashed the checks in question, would be out of town on the scheduled trial date. The prosecutor asked the defendant's counsel if he would agree to an evidentiary deposition. The defendant's counsel did agree, but just before the deposition began, the appellant said that he personally would not agree to the deposition. After an emergency hearing before the circuit judge, the judge ordered the deposition to go forward.

At trial, the witness' deposition was played to the jury, over the appellant's objection. That objection was based in part on the fact that shortly before the trial, the prosecutor had turned over to the appellant documents showing that the witness who had been deposed had lied in her deposition. Specifically, the witness had denied that the bar had a practice of making illegal payoffs on video game machines; but the document showed that the bar did have such a practice. The appellant had claimed to the officer who arrested him that his not "making good" on the checks was connected to the bar's refusal to pay the appellant for his winnings on the illegal video game machines. (As we discuss in part III.C. *infra*, the trial court also prohibited the appellant from raising the issue of illegal video game payoffs.)

The appellant's counsel argued that the use of the deposition violated the appellant's right to confront the witness and challenge her credibility by pointing out that she was willing to lie under oath about the conduct of the bar's business.

While disputing the relevance of the illegal gambling evidence, the State concedes that the circuit judge erred in admitting the deposition testimony of the witness; and moreover, the State concedes that this error was not harmless. We agree. The credibility of this witness, as with all witnesses, was at issue. Because of the timing of the document's disclosure, the appellant did not have the basis for challenging the witness' credibility in cross-examination at the deposition. The State concedes that this error constitutes grounds for reversal of the appellant's conviction, and we agree.

#### B.

### Post-dated Checks

The appellant also argues that a conviction under *W.Va.Code*, 61–3–24d [1995] may not be based on post-dated checks. Five of the six checks relied upon by the State to prove its case were post-dated.

A separate statute criminalizes the uttering of worthless or insufficient funds checks, *W.Va.Code*, 61–3–39 [1994]. That statute specifies that a worthless check conviction cannot be had if "the payee or holder knows or has been expressly notified prior to the acceptance of same or has reason to believe that the drawer did not have ... sufficient funds to insure payment ... nor shall this

section apply to any postdated check...."
*Id.*

■ While the fact that a check was post-dated is by statute an absolute defense to a charge of violating *W.Va.Code,* 61–3–39 [1994], such an absolute defense is not provided for in *W.Va.Code,* 61–3–24d [1995]. We perceive that a person could commit larceny by fraudulent scheme by obtaining money with a post-dated check—if the person had the definite and criminal intention at the time he/she uttered the post-dated check not to deposit funds to cover the check by the time it "came due," and if a jury concluded that this conduct constituted "willfully depriv[ing] another of any money, goods, property or services by means of fraudulent pretenses." *Id.*

■ We hold, therefore, that the uttering of a post-dated check may be evidence in support of a charge of violating *W.Va.Code,* 61–3–24d [1995], where the post-dated check was used for fraudulent scheme purposes and with criminal intent.

■ In the instant case, however, we have carefully examined the record, and we find that there was insufficient evidence to establish beyond a reasonable doubt that the appellant had a criminal intent with respect to the checks in question. The appellant was a regular customer who used the proceeds of the checks to gamble on video lottery "Keno" machines at the establishment to whom he issued the checks in question. The prosecution's evidence, which was basically the fact of the checks' issuance, did not permit the inference beyond a reasonable doubt that the appellant had the intention at the time he issued the checks that they would not be honored. As we discuss briefly *infra,* the appellant was precluded from offering or

eliciting certain evidence relating to why he issued the checks, but even without that evidence being put before the jury, we conclude that the State's evidence of the appellant's criminal intention to defraud using post-dated checks was insufficient to establish a criminal violation of *W.Va.Code,* 61–3–24d [1995].

C.

*Evidence of the Entire Transaction*

■ The appellant sought to introduce evidence tending to show that the appellant had not made good on the checks because the bar where the appellant cashed the checks had not paid him his winnings on illegal gambling machines. The State opposed this as *West Virginia Rules of Evidence,* Rule 404(b) "other bad acts" evidence of wrongs committed by the alleged victim, and as irrelevant to the charges against the appellant.

We disagree. The appellant had a right under the circumstances to show the scope of his dealings with the alleged victim, including to elicit evidence circumstantially tending to show that his issuance of and/or failure to make good on the checks was related to the fact that the bar would not pay him his winnings on illegal machines. A jury might find that in such a situation the appellant did not have the requisite criminal or fraudulent intent to support a conviction.

IV.

*Conclusion*

The appellant's conviction must be reversed, and our finding of the insufficiency of the evidence for conviction prohibits a retrial.[1]

Reversed.

---

1. We observe that the appellant "paid the checks off" a few days before trial, but the prosecution went forward with a trial on the charge of a felony. While the briefs and argument in the instant case by the appellant's counsel and the Attorney General's Office were helpful, our review of the record suggests that in the lower court, prosecutorial zeal may have gotten in the way of common sense. In *State v. Orth,* 178

W.Va. 303, 359 S.E.2d 136 (1987), we reversed a conviction of a compulsive gambler on a worthless check charge. Our decision in that case reflected a common-sense appreciation that the State should be hesitant to treat a customer of a gambling business who "gets in too deep" in the same fashion as a professional car thief or con artist.

MAYNARD, Justice, concurring in part, and dissenting in part.

I agree with the majority that the admission of deposition testimony of a witness constituted grounds for reversal of the appellant's conviction. Also, I agree that the appellant had the right to present circumstantial evidence linking his issuance of bad checks to the bar's alleged failure to pay him his winnings on illegal machines. However, I do not agree that the State's evidence of intent to defraud was insufficient to establish a criminal violation, and that the appellant cannot be retried. Therefore, I would reverse and remand for a new trial.

After reading the majority's summary treatment of the issue, I am still at a loss as to the Court's specific reasoning for finding that the evidence below was insufficient. The applicable portion of the opinion cites no law, fails to supply any real analysis, and reaches the inconclusive decision that "[a] jury *might* find that in such a situation the appellant did not have the requisite criminal or fraudulent intent to support a conviction." (Emphasis added). The flip side of the coin is that, presented with all the evidence, a jury *might* find fraudulent intent. In which case, the evidence is not insufficient.

This Court has not dealt extensively with the code section at issue, W.Va.Code § 61–3–24d (1995), under which the appellant was prosecuted. This code section is similar to W.Va.Code § 61–3–24 (1994) which says in pertinent part, "If a person obtains from another by any false pretense, token or representation, with intent to defraud, any money, goods or other property which may be the subject of larceny ... [s]uch person is guilty of larceny." Concerning a comparison of these two code sections, we have held, "Every element necessary for a conviction of larceny by false pretense under West Virginia Code § 61–3–24 (1994) (Repl.Vol.2000) is also an element for conviction of larceny by fraudulent scheme under West Virginia Code § 61–3–24d (1995) (Repl.Vol.2000)." Syllabus Point 8, *State v. Rogers*, 209 W.Va. 348, 547 S.E.2d 910 (2001). Accordingly, I believe that we can look to case law applying or interpreting W.Va.Code § 61–3–24 to aid in our reading of W.Va.Code § 61–3–24d.

In Syllabus Points 1 and 2 of *State v. Augustine*, 114 W.Va. 143, 171 S.E. 111 (1933), this Court held:

1. The giving of a check is, in itself, a representation that the accused has money or credit with the drawee to the amount of its face value.

2. A case in which the giving of a check, with request to withhold presentment for one week, amounted, under the circumstances, to a false representation, within the meaning of Code 1931, 61–3–24.

According to W.Va.Code § 61–3–24d(a), at issue in this case, "Any person who willfully deprives another of any money, goods, property or services by means of fraudulent pretenses, representations or promises shall be guilty of the larceny thereof." The facts of this case indicate that the appellant represented, *i.e.* by the giving of several checks, that he had money with the drawee to the amount of the face value of the checks. "A statement, or claim, or document, is 'fraudulent' if it was falsely made ... with the intent to deceive." Black's Law Dictionary 662 (6th ed.1990). The facts further indicate that when the appellant cashed the checks at the bar, he did not have money in the bank to cover the checks. Therefore, I see no reason why a jury Could not reasonably infer from this evidence that the appellant "willfully" deprived the bar of money or services by means of fraudulent representations.

As noted above, the majority states, and I agree, that the appellant had a right to elicit circumstantial evidence linking his issuance of bad checks to the fact that the bar would not pay him his illegal winnings. If the majority is suggesting, which is by no means clear, that the appellant was merely trying to collect on a just debt, I understand that we have case law that says that a person cannot be held guilty of procuring money by false pretenses, with intent to defraud, who has merely collected a debt justly due him. *State v. Williams*, 68 W.Va. 86, 69 S.E. 474 (1910). However, the appellant's intent

would still be a question for the jury after it was presented with all the relevant evidence.

I suspect, however, that the explanation for the majority's decision cannot be found in its truncated reasoning in the body of the opinion but rather in the opinion's lone footnote. In that footnote, the majority admonishes the prosecutor below for treating a poor, hapless gambler who "gets in too deep" in the same fashion as a professional car thief or con artist. In other words, the majority reverses the conviction and bars retrial because it would not have brought the case in the first place.

In my opinion, this Court should not impose its own policy preferences on the prosecutors of this State, and it certainly should not decide cases based on those preferences. Prosecutorial discretion is a treasured hallmark of the American judicial system. It is a function of the executive and not the judicial branch of government. And that is the way it should be! Determinations concerning whom to charge with a crime, whether to charge, and what to charge are prosecutorial decisions and should never be made by judges in a free society. In this case, the majority chides a prosecutor for the proper exercise of his or her function, specifically alleging that he or she charged too aggressively. What is to prevent this Court in the next case from complaining that a prosecutor is too soft and urging stronger and harsher criminal prosecutions of a particular class of offenders, *i.e.*, drug dealers, wife beaters, child sex offenders, or any other type of offender that is very unpopular in our society? In short, judges should judge and prosecutors should prosecute.

Because I would have reversed the appellant's conviction and remanded for a new trial, I concur in part and dissent in part.