IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA

January 2025 Term

_____

No. 24-432

_____

FILED

**March 25, 2025**

released at 3:00 p.m.
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

STATE OF WEST VIRGINIA EX REL. STATE OF WEST VIRGINIA,
Petitioner,

v.

THE HONORABLE BRIDGET COHEE, JUDGE OF THE CIRCUIT COURT OF
BERKELEY COUNTY, and LATEEF JABRALL MCGANN,
Respondents.

_____

Petition for Writ of Prohibition

WRIT GRANTED

_____

Submitted: February 18, 2025
Filed: March 25, 2025

John B. McCuskey, Esq.
Attorney General
Michael R. Williams, Esq.
Solicitor General
Katie Franklin, Esq.
Assistant Attorney General
Charleston, West Virginia
Counsel for Petitioner

S. Andrew Arnold, Esq.
Cameron LeFevre, Esq.
Arnold & Bailey, PLLC
Charles Town, West Virginia
Counsel for Respondent

JUSTICE TRUMP delivered the Opinion of the Court.

**SYLLABUS OF THE COURT**

1.      "In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight." Syllabus Point 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

2.      "For purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c) [now (d)], two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West

i

Virginia Constitution." Syllabus Point 12, *State v. Hoyle*, 242 W. Va. 599, 836 S.E.2d 817 (2019).

**TRUMP, Justice:**

The Respondent, Lateef Jabrall McGann (Mr. McGann) was convicted by a petit jury for the felony offense of fleeing from a law enforcement officer with reckless indifference in violation of West Virginia Code § 61-5-17(f) (2020). The State of West Virginia then filed a recidivist information asserting that an appropriate sentence would be life with mercy under West Virginia Code § 61-11-18(d) (2021). After the recidivist jury returned its verdict against Mr. McGann, the Respondent Judge (the circuit court), concluded that imposition of a recidivist life sentence would offend the proportionality clause of Article III, § 5 of the West Virginia Constitution or was impermissible because the State arbitrarily and capriciously invoked the recidivist statutes against Mr. McGann. The State now seeks a writ of prohibition to prohibit the circuit court from imposing anything other than a recidivist life sentence on Mr. McGann. After thoroughly reviewing the parties' written submissions, hearing oral argument, and considering the pertinent legal authorities, we conclude the State has proven its entitlement to a writ of prohibition. Therefore, we issue the State's requested writ of prohibition.

## I.     FACTS AND PROCEDURAL BACKGROUND

Mr. McGann was indicted for the felony offense of fleeing a law enforcement officer with reckless indifference in violation of West Virginia Code § 61-5-17(f), the misdemeanor offense of fleeing by means other than use of a vehicle (fleeing on foot) in violation of West Virginia Code § 61-5-17(d), and the misdemeanor offense of driving

1

without a valid driver's license in violation of West Virginia Code § 17B-2-1(a) & (i). All these offenses were alleged to have occurred on September 30, 2021.

A petit jury convicted Mr. McGann of the felony of fleeing a law enforcement officer with reckless indifference and the misdemeanor of fleeing on foot but acquitted him of driving without a valid driver's license. The State filed a recidivist information followed by an amended recidivist information that corrected a clerical error in the original information.[1] Both the original recidivist information and the amended recidivist information alleged that Mr. McGann had been convicted in federal court on December 10, 2009, for felony possession with intent to distribute cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(C), and for being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). The informations further alleged that Mr. McGann was sentenced to serve fifty-seven months in a federal penitentiary. Finally, both recidivist informations also alleged that on May 2, 2008, Mr. McGann had been convicted in West Virginia state court of the felony offense of wanton endangerment under West Virginia Code § 61-7-12, and that he was sentenced to two years in the penitentiary for this conviction.

---

[1]Mr. McGann filed a motion to dismiss the recidivist information in the circuit court due to the clerical error. The circuit court granted his motion, and the State sought a writ of prohibition from this Court prohibiting dismissal of the recidivist proceeding. We granted the State's requested writ of prohibition in *State ex rel. Delligatti v. Cohee*, No. 22-921, 2023 WL 3676890 (W. Va. May 26, 2023) (memorandum decision).

Prior to the recidivist trial, Mr. McGann filed another motion to dismiss the recidivist case against him. A copy of this motion to dismiss is not included in the appendix record, but the circuit court's order denying the motion to dismiss is. In its order, the circuit court found that Mr. McGann's conviction for wanton endangerment was "a crime of actual or threatened violence under *State v. Hoyle*, 242 W. Va. 199, 836 S.E.2d 817 (2019)."[2] It similarly found that Mr. McGann's federal convictions for possession with intent to deliver cocaine base and for being a felon in possession of a firearm were crimes of actual or threatened violence under *Hoyle*. Finally, the circuit court concluded that Mr. McGann's conviction for fleeing with reckless indifference also constituted a crime of actual or threatened violence under *Hoyle*. Therefore, the circuit court concluded that "[b]ecause all of the felony convictions listed by the State in the recidivist information are crimes of actual or threatened violence, the Court is satisfied that pursuit of a recidivist sentence in this matter is not disproportionate to the Defendant's conduct."

A recidivist jury found that Mr. McGann, who had been convicted of the felony offense of fleeing with reckless indifference, was the same person who had previously been convicted of the federal offenses of possession with intent to deliver cocaine base and being a felon in possession of a firearm and who had previously been convicted in West Virginia state court of the felony offense of wanton endangerment.

---

[2]*Hoyle* is discussed below. Essentially, we held in Syllabus Point 12 of that case that to satisfy the West Virginia Constitution, two of the three felonies must be violent, or pose a threat of violence, or substantially impact the victim such that harm results.

Mr. McGann subsequently filed a sentencing memorandum with the circuit court arguing that, under the circumstances, imposition of a life sentence under the recidivist statute would violate the proportionality clause of Article III, § 5 of the West Virginia Constitution. The State's sentencing memorandum rejected this position and asserted that the circuit court lacked the authority to sentence Mr. McGann to anything other than a life sentence with mercy because West Virginia Code § 61-11-19 provides that once a recidivist jury finds the defendant has been previously convicted of qualifying offense(s), "the court shall sentence him or her to such further confinement as is prescribed by § 61-11-18 of this code on a second or third conviction as the case may be[.]"

At the sentencing hearing, the circuit court concluded, without reference to its previous ruling that a recidivist life sentence in this case would not be constitutionally disproportionate, that imposition of a recidivist sentence on Mr. McGann would be constitutionally impermissible. The circuit court explained its rationale for this ruling as follows:

> THE COURT: So I have spent a lot of time thinking and reading the case law and revisiting the statute and trying to determine what is the appropriate outcome in this case.
>
> I was the judge at the trial of the initiating offense so all of that information was before me in the form of evidence that was presented at that trial.
>
> The State's taking the position in their briefing, their sentencing brief, that I do not have the discretion and that the statute says "shall." So I have

4

spent a lot of time reading the case law to determine whether that is correct or not.

This Court took an oath to uphold the Constitution of West Virginia and the Constitution of the United States and they both contain express statements of the proportionality principle.

Article 3, Section 5 of the West Virginia Constitution and the Eighth Amendment of the United States Constitution states that penalties shall be proportioned to the character and degree of the offense.[3]

The underlying charge of fleeing with reckless disregard is a dangerous and clearly reckless act and it shows indifference to the safety of others. The statutory penalty for that offense is not less than one nor more than five years [of incarceration].

And the State has now filed this recidivism action which in seven-and-a-half years on the bench this is the first recidivist action that the State has pursued.

Plea deals with much more serious criminal conduct and serious injury to victims plead away recidivism. The State routinely bargains recidivism away in plea deals.

I cannot help but reach the conclusion that the recidivism statute as currently employed in this case appears to me to be arbitrary and capricious.

I do not think a life sentence in this case is constitutional. I find that it would be cruel and unusual punishment.

---

[3]This is inaccurate. The Eighth Amendment to the United States Constitution prohibits the imposition of cruel and unusual punishments, but it does not contain a textually explicit proportionality guarantee. *See State ex rel. Appleby v. Recht*, 213 W. Va. 503, 514, 583 S.E.2d 800, 811 (2002) (per curiam); *Wanstreet v. Bordenkircher*, 166 W. Va. 523, 529, 276 S.E.2d 205, 209 (1981). Rather, the United States Supreme Court has held that implicit in the Eighth Amendment's ban on cruel and unusual punishment is a narrow proportionality principle that applies to non-capital cases. *Ewing v. California*, 538 U.S. 11, 20 (2003). Thus, "[t]he Eighth Amendment does not require strict proportionality between crime and sentence. Rather, it forbids only extreme sentences that are 'grossly disproportionate' to the crime." *Id.* at 23. Neither the circuit court nor Mr. McGann relies on the federal gross disproportionality test, and we do not further address it.

So in further making my record of my analysis[,] in syllabus point five State versus Horton, [248 W. Va. 41, 886 S.E.2d 509 (2023)] the West Virginia Supreme Court of Appeals has stated that penalties shall be proportioned to the character and degree of the offense.

In syllabus point six the West Virginia Supreme Court has stated, while constitutional proportionality standards theoretically can apply to any criminal sentence, they are basically applicable to those sentences where there is either no fixed maximum set by statute or where there is a life recidivist sentence.

The initial emphasis that this Court is to look at is the nature of the final offense and that has been instructive to this Court. Again, I was the trial court judge that sat through that evidence.

As I stated earlier, there was a threat of violence. This was a reckless fleeing which puts the safety of others at risk. There was no injury.

The presentencing investigation analysis of that underlying case states there's no victim so no one was harmed. The officer, the arresting officer, in that case took no position on sentencing in the PSI. That is very instructive to this Court when the officer who addressed the conduct does not take a position on sentencing. The silence speaks to the Court.

Clearly evading the police carries a risk of violence and the potential for serious injury. The statutory penalty is not less than one nor more than five [years of incarceration]. There's a lengthy criminal history here that the Court has to consider. So I do think there should be some enhancement of that one to five. I believe that the appropriate proportional sentence is twice the minimum term.

I am sentencing Mr. McGann to not less than two nor more than ten [years of incarceration].

I am going to note the State's objection.  Clearly, the State has taken the position that the statute says "shall" and that that means that this Court does not have the discretion to do what I am doing today.

I want clearly to state that I think the recidivism statute is being employed arbitrary and capricious – in an arbitrary and capricious manner and that is the basis of me finding that I do have discretion.

The circuit court memorialized its sentencing ruling in a written order dated July 24, 2024. On August 5, 2024, the State filed its petition for a writ of prohibition to prohibit the circuit court from imposing upon Mr. McGann any sentence other than a recidivist life sentence pursuant to West Virginia Code § 61-11-18(d).

## II.     STANDARD FOR ISSUING THE WRIT

Under West Virginia Code § 53-1-1 (1923), "[t]he writ of prohibition shall lie as a matter of right in all cases of usurpation and abuse of power, when the inferior court has not jurisdiction of the subject matter in controversy, or, having such jurisdiction, exceeds its legitimate powers." In the present case, the State argues that the circuit court exceeded its legitimate powers in refusing to sentence Mr. McGann to a recidivist life sentence. We have explained:

> In determining whether to entertain and issue the writ of prohibition for cases not involving an absence of jurisdiction but only where it is claimed that the lower tribunal exceeded its legitimate powers, this Court will examine five factors: (1) whether the party seeking the writ has no other adequate means, such as direct appeal, to obtain the desired relief; (2) whether the petitioner will be damaged or prejudiced in a way that is not correctable on appeal; (3) whether the lower tribunal's order is clearly erroneous as a matter of law; (4) whether the lower tribunal's order is an oft repeated error or manifests persistent disregard for either procedural or substantive law; and (5) whether the lower tribunal's order raises new and important problems or issues of law of first impression. These factors are general guidelines that serve as a useful starting point for determining whether a discretionary writ of prohibition should issue. Although all five factors need not be satisfied, it is clear that the third factor, the existence of clear error as a matter of law, should be given substantial weight.

Syl. Pt. 4, *State ex rel. Hoover v. Berger*, 199 W. Va. 12, 483 S.E.2d 12 (1996).

7

Having set forth the standards governing our decision, we now apply them to the facts of this case.

### III. DISCUSSION

In addressing the *Hoover* factors, we find that the State easily meets the first criterion in *Hoover* as the State lacks the authority to appeal from the circuit court's order sentencing Mr. McGann to something less than a recidivist life sentence. *See, e.g.*, *State v. Adkins*, 182 W. Va. 443, 446, 388 S.E.2d 316, 319-20 (1989) (observing that the State may appeal only when an indictment is held bad or insufficient or in criminal proceedings relating to the public revenue). The petition also meets the second factor, for if the circuit court erred, absent this Court issuing a writ of prohibition, the State would be denied its right to a valid sentence against Mr. McGann. We are not convinced that the fourth and fifth *Hoover* factors are met because the circuit court's order does not appear to be oft repeated or persistent nor does the order appear to raise matters of first impression. We therefore turn to the most important of the *Hoover* factors—whether the circuit court's order is clearly erroneous as a matter of law. We find that it is.

In declining to impose a recidivist life sentence, the circuit court appeared to rely on two separate constitutional theories, disproportionate sentencing and substantive due process. As discussed below, because neither theory validates the circuit court's decision, the circuit court clearly erred in refusing to sentence Mr. McGann to a recidivist life sentence.

8

## A.    *Disproportionate sentencing*

In the instant case, the State sought sentencing under the West Virginia recidivist statutes, West Virginia Code §§ 61-11-18[4] and 61-11-19. On September 30, 2021 (the date Mr. McGann fled with reckless indifference), West Virginia Code § 61-11-18(d) provided, in pertinent part:

> When it is determined, as provided in § 61-11-19 of this code, that [a] person shall have been twice before convicted in the United States of a crime punishable by imprisonment in a state correctional facility which has the same or substantially similar elements as a qualifying offense, the person *shall* be sentenced to imprisonment in a state correctional facility for life[.][5]

(emphasis added).

The recidivist jury found that Mr. McGann was the same person who had been convicted of possession with intent to distribute cocaine base and as a felon in possession of a firearm in federal court and that he was the same person who had been

---

[4]Beginning in 2020, the Legislature enumerated the crimes that qualified for treatment as triggering and predicate offenses under West Virginia Code § 61-11-18, denominating them "qualifying offenses." Although the exact citations have changed over the years, Mr. McGann's triggering offense of fleeing law enforcement with reckless indifference and his predicate offenses of possession with intent to distribute cocaine base, felon in possession and wanton endangerment have all been incorporated as qualifying offenses under West Virginia Code § 61-11-18(a). We also recognize that federal and non-West Virginia state crimes constitute qualifying offenses when they have "the same or substantially similar elements as a qualifying offense[.]" *Id*. § 61-11-18(d). Mr. McGann does not contest that his federal offenses constitute qualifying offenses under West Virginia law.

[5]The most recent version of West Virginia Code § 61-11-18(d) (2024) differs from the 2021 version only stylistically.

convicted of the felony offense wanton endangerment in West Virginia state court. It also found each offense and conviction was subsequent to the other. Therefore, unless the recidivist life sentence was constitutionally disproportionate, as a matter of statutory law, the Legislature's use of the mandatory word "shall" in West Virginia Code § 61-11-18(d) required the circuit court to sentence Mr. McGann to a recidivist life sentence under the statute. *See State v. Harris*, 226 W. Va. 471, 477, 702 S.E.2d 603, 609 (2010) (per curiam) ("If the jury finds or the defendant admits, after waiving the right to jury determination, that he/she is the same person named in the conviction or convictions set forth in the information, the trial court must sentence the defendant as provided for under W. Va. Code § 61-11-18.").

However, notwithstanding the Legislature's use of the word "shall" in West Virginia Code § 61-11-18(d), the inquiry is not at an end because a recidivist life sentence is nevertheless subject to scrutiny under the proportionality clause of the West Virginia Constitution. *See State v. Lane*, 241 W. Va. 532, 538, 826 S.E.2d 657, 663 (2019) ("Despite the statute providing that a life sentence 'shall' be imposed where a defendant has been convicted of three felonies, any life sentence imposed by the circuit court under the recidivist statute, nonetheless, is subject to scrutiny under the proportionality clause of our Constitution."). In the instant case, the circuit court properly exercised its authority to undertake such a review and concluded that Mr. McGann's recidivist life sentence failed such scrutiny. We disagree that imposition of a recidivist life sentence on Mr. McGann violates the proportionality clause of the West Virginia Constitution.

10

"[W]hen reviewing the appropriateness of a life recidivist sentence, we consider the nature of the triggering offense and whether the prior offenses involved actual or threatened violence." *State v. Horton*, 248 W. Va. 41, 47, 886 S.E.2d 509, 515, *cert. denied*, 143 S. Ct. 2683 (2023). As we explained in Syllabus Point 12 of *State v. Hoyle*,

> [f]or purposes of a life recidivist conviction under West Virginia Code § 61-11-18(c) [now (d)], two of the three felony convictions considered must have involved either (1) actual violence, (2) a threat of violence, or (3) substantial impact upon the victim such that harm results. If this threshold is not met, a life recidivist conviction is an unconstitutionally disproportionate punishment under Article III, Section 5 of the West Virginia Constitution.

242 W. Va. 599, 836 S.E.2d 817.

In this case, the circuit court found during the sentencing hearing that: "[t]he underlying charge of fleeing with reckless disregard is a dangerous and clearly reckless act and it shows indifference to the safety of others"; "[a]s I stated earlier, there was a threat of violence. This was a reckless fleeing which puts the safety of others at risk"; and, "[c]learly evading the police carries a risk of violence and the potential for serious injury." This is consistent with this Court's reiteration in *Horton* that the crime of fleeing from a law enforcement officer in a vehicle under West Virginia Code § 61-5-17(f) constitutes a violent felony for purposes of the proportionality clause of the West Virginia Constitution. 248 W. Va. at 48, 886 S.E.2d at 516.

11

Nevertheless, the circuit court placed great emphasis on the fact that no one was hurt by Mr. McGann's flight from the police and that the arresting officer took no position as to sentencing. The circuit court's position that Mr. McGann's fleeing was violent, but not violent enough to justify a recidivist life sentence because no one was injured, finds no support in West Virginia law. For example, no one was injured in *Horton*, but this Court still affirmed the recidivist life sentence. Similarly, in *State ex rel. Appleby v. Recht*, 213 W. Va. 503, 583 S.E.2d 800 (2002) (per curiam), this Court upheld a recidivist life sentence based upon third offense driving under the influence where the driver did not harm or injure anyone while driving under the influence. Finally, in *State v. Housden*, 184 W. Va. 171, 399 S.E.2d 882 (1990), we affirmed a recidivist life sentence in a burglary case where no one was injured, and even though the defendant took steps to ensure the house he burglarized was unoccupied during the crime.[6] As to the circuit court's reliance

---

[6]The circuit court did not address whether Mr. McGann's predicate offenses constitutionally support a recidivist sentence against a claim of disproportionality. We have considered this and conclude they do. *See Horton*, 248 W. Va. at 47, 886 S.E.2d at 515 ("As the State notes, even the petitioner recognizes that his two prior felonies—malicious assault and wanton endangerment—involved actual violence or at least a threat of violence."); *State v. Costello*, 245 W. Va. 19, 33, 857 S.E.2d 51, 65 (2021) (distribution of crack cocaine involved the threat of violence); *State v. Gaskins*, No. 18-0575, 2020 WL 3469894, at *4 (W. Va. June 25, 2020) (memorandum decision) ("[P]etitioner's prior convictions of delivery of a controlled substance, specifically cocaine, has a substantial impact on the victim of the crime."); *id*. ("[P]ossession of a firearm by a prohibited person is certainly a crime that involves a threat of violence."); *State v. Keith D*., No. 18-0479, 2021 WL 2580721, at *2 (W. Va. June 23, 2021) (memorandum decision) (finding that the crime of being a prohibited person in possession of a firearm is a violent crime and its use in a recidivist proceeding does not violate the proportionality clause).

on the police officer's decision not to take a position on sentencing, we do not view that to be a factor relevant to a claim of constitutional disproportionality.

We thus conclude that imposition of a recidivist life sentence on Mr. McGann was not constitutionally disproportionate.[7]

B. *Substantive Due Process (Selective Prosecution)*

While the circuit court relied on the proportionality clause in its decision, it also stated that it believed that the State was applying the recidivist statutes arbitrarily and capriciously. The circuit court asserted that in her seven-and-one-half years on the bench this case was the first where the State pursued a recidivist sentencing and that the State routinely bargained away recidivism in plea deals, including in cases where there was much more serious criminal conduct at issue and where there was serious injury to victims. However, these observations do not address proportionality and do not justify the circuit court's refusal to impose a recidivist life sentence.

The circuit court used the phrase "arbitrary and capricious." The State erroneously asserts that the phrase "arbitrary and capricious" only applies in the

_____

[7]Neither the circuit court nor Mr. McGann invoked any grounds other than the issue of violence to argue that a recidivist life sentence would be constitutionally disproportionate. Therefore, we do not address any other grounds either.

administrative law area. However, it also applies in the constitutional substantive due process area, although with a different meaning. *See, e.g.*, *Amsden v. Moran*, 904 F.2d 748, 753 (1st Cir. 1990) (citation omitted) ("It has been said, for instance, that substantive due process protects individuals against state actions which are 'arbitrary and capricious[.]'"); *In re Herrick*, 922 P.2d 942, 962 (Haw. 1996) ("Due process includes a substantive component that guards against arbitrary and capricious government action[.]"); *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1222 (6th Cir. 1992) ("[A]rbitrary and capricious' in the federal substantive due process context means something far different than in state administrative law."). Since this is not an administrative law case, the administrative law concept of arbitrary and capricious application of law would not apply.

"Substantive due process may be broadly defined as the constitutional guaranty that no person shall be arbitrarily deprived of his life, liberty, or property. The essence of substantive due process is protection from arbitrary and capricious action." *Stevens v. St. Tammany Par. Gov't*, 322 So.3d 1268, 1285 (La. Ct. App. 2021). Substantive due process, though, does not limit the authority of the State—its prosecutorial discretion—to seek a recidivist life sentence.

"Prosecutorial discretion is a treasured hallmark of the American judicial system." *State v. Braham*, 211 W. Va. 614, 619, 567 S.E.2d 624, 629 (2002) (Maynard, J., concurring in part). "Broadly defined, the term 'prosecutorial discretion' refers to the soup-to-nuts entirety of '[a] prosecutor's power to choose from the options available in a

criminal case, such as filing charges, prosecuting, not prosecuting, plea-bargaining, and recommending a sentence to the court.'" *In re Wild*, 994 F.3d 1244, 1260 (11th Cir. 2021) (quoting "Prosecutorial Discretion," *Black's Law Dictionary* (10th ed. 2014)).

We have recognized the principle of prosecutorial discretion in our case law. "The prosecutor's discretion in the management of criminal causes includes decisions on what charges to file, against whom, in what court and the type of indictment to be sought, as well as, the order and timing of these activities." *State v. Satterfield*, 182 W. Va. 365, 367, 387 S.E.2d 832, 834 (1989); *see also Law. Disciplinary Bd. v. Taylor*, No. 23-133, 2024 WL 4767010, at *12 (W. Va. Nov. 13, 2024) (memorandum decision) (recognizing that "prosecutors have wide discretion in what cases to pursue and how to pursue them[.]"). Such discretion also includes the decision to invoke the recidivist statute. *See State ex rel. Daye v. McBride*, 222 W. Va. 17, 23, 658 S.E.2d 547, 553 (2007) ("[H]istorically the prosecuting attorney has exercised discretion as to whether or not to file an information to seek recidivist enhancements under *W. Va. Code*, 61-11-18 (2000) and *W. Va. Code*, 61-11-19 (1943)."). Admittedly, "[a]lthough broad, the prosecutor's discretion is not unlimited." *Satterfield*, 182 W. Va. at 367, 387 S.E.2d at 834. Thus, a prosecutor's discretion is subject to certain limitations, albeit not the substantive due process limitation that the circuit court appeared to invoke in this case.[8]

---

[8]Due process does place other limitations on prosecutorial discretion, such as vindictive prosecution. *See, e.g., United States v. Tobin*, 598 F. Supp. 2d 125, 132 (D. Me. 2009) (citation omitted) ("[T]he vindictive prosecution doctrine imposes critical 'constitutional limits' upon the exercise of prosecutorial discretion.").

For example, in *United States v. Smith*, 953 F.2d 1060, 1063 (7th Cir. 1992), the court of appeals explained, "[a]rbitrariness—that is, unjustified disparities in the treatment of similarly situated persons—is not among the grounds on which to contest an exercise of prosecutorial discretion." *See United States v. Green*, 654 F.3d 637, 653 (6th Cir. 2011) (observing that *Smith* stands "for the proposition that an exercise of prosecutorial discretion may not be challenged for arbitrariness under the doctrine of substantive due process."). Indeed, the United States Supreme Court found in *Oyler v. Boles*, 368 U.S. 448, 456 (1962) that "the conscious exercise of some selectivity in enforcement [of a recidivist statute] is not in itself a federal constitutional violation." What does constitute a constitutional violation is the selective exercise of prosecutorial discretion in violation of equal protection. *See United States v. Morrison*, 596 F. Supp. 2d 661, 704 (E.D.N.Y. 2009) ("The final flaw in defendant's argument is that his claim that the federal government arbitrarily chose to prosecute him alone sounds more in selective prosecution, rather than arbitrary enforcement."), *on reconsideration in part*, 706 F. Supp. 2d 304 (E.D.N.Y. 2010), *rev'd and remanded on other grounds*, 686 F.3d 94 (2d Cir. 2012). We do not see evidence of a selective prosecution violation in the record before us in this case.

"It is appropriate to judge selective prosecution claims according to ordinary equal protection standards." *Wayte v. United States*, 470 U.S. 598, 608 (1985); *see also United States v. Ryan*, 619 F. Supp. 3d 581, 590 (E.D. La. 2022) ("The government generally enjoys broad discretion in determining whom it will prosecute. That discretion,

16

however, is constrained by the equal-protection component of the Fifth Amendment's Due Process Clause."); *Brooks v. State of Okl.*, 862 F. Supp. 342, 344 (W.D. Okla. 1994) ("[T]he exercise of prosecutorial discretion is subject to constitutional constraints under the Equal Protection Clause[.]"), *aff'd*, 92 F.3d 1196 (10th Cir. 1996). Thus, "[u]nless the prosecutor acts on forbidden grounds such as race or speech, the court must respect the executive's selection from the menu of crimes with which the defendant could have been charged." *Smith*, 953 F.2d at 1063 (citing *Wayte v. United States*, 470 U.S. 598 (1985) and *United States v. Batchelder*, 442 U.S. 114 (1979)).

A defendant seeking to prove selective prosecution in a criminal case bears a very high burden. "[I]n the criminal-law field, a selective prosecution claim is a *rara avis*. Because such claims invade a special province of the Executive—its prosecutorial discretion—we have emphasized that the standard for proving them is particularly demanding, requiring a criminal defendant to introduce 'clear evidence' displacing the presumption that a prosecutor has acted lawfully." *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 489 (1999) (citing *United States v. Armstrong*, 517 U.S. 456, 563-54 (1996)). Consequently, the criminal defendant must prove that the prosecutorial policy "'had a discriminatory effect and that it was motivated by a discriminatory purpose.'" *Armstrong*, 517 U.S. at 465 (quoting *Wayte*, 470 U.S. at 608).

West Virginia law is in accord. "There is a presumption that prosecuting attorneys . . . will perform their duties with integrity[.]" *Harman v. Frye*, 188 W. Va. 611,

17

620, 425 S.E.2d 566, 575 (1992); *see also State by State Rd. Comm'n v. Pro. Realty Co.*, 144 W. Va. 652, 662-63, 110 S.E.2d 616, 623 (1959) ("A public official, in the performance of official duties imposed upon him by law, is presumed to have done his duty and to have acted in good faith and from proper motives until the contrary is shown."). Consequently, "a defendant bears a heavy burden of establishing that he has been singled out over others similarly situated *and* that the selectivity in favor of him is based on some impermissi[ble] consideration as race, religion or an attempt to prevent his exercise of constitutional rights." *Martin v. Leverette*, 161 W. Va. 547, 553, 244 S.E.2d 39, 43 (1978); *see also In re H.J.D.*, 180 W. Va. 105, 108 n.4, 375 S.E.2d 576, 579 n.4 (1988). The circuit court's ruling in this case is not supported by evidence in the record that can satisfy this heavy burden.

We accept, *arguendo*, the circuit court's assertions that the State had not filed a recidivist action in seven-and-one-half years and that the State "routinely bargains recidivism away in plea deals," but this does not *ipso facto* entitle Mr. McGann to relief as it does not allege, much less prove, invidious discrimination. "'Even though the statistics in this case might imply a policy of selective enforcement, it was not stated that the selection was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.'" *Martin*, 161 W. Va. at 553, 244 S.E.2d at 42-43 (quoting *Oyler*, 368 U.S. at 456); *see also State v. Rowe*, 354 A.2d 701, 704 (N.J. Super Ct. App. Div. 1976) ("Defendant claims that since, according to the prosecutor, he 'was the first person to be sentenced under the Multiple Offender Statute in Middlesex County in the

past number of years,' this 'selective application of' the 'statute raises serious questions of the equal protection under the Fifth and Fourteenth Amendments.' We find no merit in this claim. It has not been demonstrated that the selection here 'was deliberately based upon an unjustifiable standard such as race, religion, or other arbitrary classification.' *Oyler v. Boles*, 368 U.S. 448, 82 S. Ct. 501, 7 L.Ed.2d 446, 453 (1962)."), *aff'd*, 406 A.2d 169 (N.J. 1978) (per curiam).

Because the circuit court's ruling provides no support that the State's pursuit of a recidivist sentence against Mr. McGann violated his equal protection rights, we conclude the circuit court erred in refusing to impose a recidivist life sentence.

### III.    CONCLUSION

For the foregoing reasons, we grant the requested writ of prohibition and prohibit the circuit court from entering any sentence other than a recidivist life sentence.

Writ granted.

19